ARMES v. MISSOURI INS. CO.

No. 28764.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1954.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 12, 1954.

874

Jones, Hocker, Gladney & Grand, H. C. Gaebe, Jr., St. Louis, for appellant.

C. Frank Aldrich, Russell A. Grantham, St. Louis, Fletcher Lewis, Murphysboro, Ill., for respondent.

ANDERSON, Presiding Judge.

This is an action on two policies of life insurance which were issued by the defendant, Missouri Insurance Company, to Roy W. Armes, deceased. Plaintiff, Thelma Armes, widow of the deceased, sues as beneficiary named in the policies. There was a verdict and judgment below for plaintiff. From this judgment, defendant has appealed.

The policies were issued on October 11, 1948. Each policy provided for a death benefit in the sum of $500, and a like sum in addition upon receipt of due proof that insured's death was the result of bodily injury sustained through accidental means.

Insured died September 24, 1950, as the result of gunshot wounds inflicted by a person unknown. Thereafter, plaintiff made claim under the policies. Upon receipt of this claim, defendant issued and forwarded to plaintiff a check for $1,020.16, being the amount of the ordinary death benefit provided by said policies, plus the sum of $20.16, being a premium refund due at the time. Plaintiff refused to accept this check and returned it to defendant. Plaintiff's refusal was based on the contention that she was entitled to an additional $1000 under the double indemnity provision of the policies. Thereafter, defendant denied liability for any amounts under the policies, on the ground that said policies were void by reason of misrepresentation by the insured as to the nature of his occupation.

Plaintiff's petition was in conventional form, alleging the issuance of said policies, the death of insured by accidental means, and a demand and refusal to pay.

By way of affirmative defense, defendant pleaded that the policies were applied for and delivered in Illinois and were subject to the law of Illinois. It was then alleged that:

"(b) Roy W. Armes, as insured under the two above mentioned insurance policies, represented to defendant in his insurance application that his occupation was an 'Athletic Director', when in truth and fact that was not his occupation then or thereafter, but that his occupation consisted of the operation of certain gaming and gam-

bling rooms, together with other attendant enterprises.

"(c) Defendant relied upon said application, containing the statements, answers, and representations aforesaid and approved said application and issued its policies aforesaid on October 11, 1948. Had defendant known the true facts it would not have issued the policies herein involved, and said facts were material to the acceptance of the risk and substantially increased the hazards of the event insured against, namely, the death of said insured, Roy W. Armes.

"(d) By virtue of the facts and misrepresentations aforesaid and under the provisions of Chapter 73, Section 766 (Illinois Revised Statutes 1949) said policies were voidable and were so declared by the defendant.

"8. And by way of further answer, defendant states that Roy W. Armes, insured aforesaid, did willfully, intentionally, and fraudulently deceive defendant by concealing from defendant the fact that he was engaged in an occupation different from that so stated to defendant and by falsely, fraudulently, and intentionally stating to defendant that he was engaged in an occupation different from that which he, in truth and in fact, was then and thereafter engaged, all for the purpose of causing defendant to issue said policies of insurance as aforesaid, and that defendant, in relying upon said statements and concealments of the insured aforesaid, caused said policies to be issued, and that because of said deceptions, concealment and fraudulent statements, said insurance policies never became binding contracts and were and are wholly void and of no effect, and defendant makes tender of the full return of premiums paid upon said policies in the amount of $135.52, with interest, to abide the orders of this court."

Plaintiff, in her reply, denied each and every allegation of the affirmative defense set up by defendant in its answer. By said reply it was further averred that defendant did not attach to said policies a copy of insured's application therefor, and for that reason, under Section 766 of Chapter 73 Illinois Revised Statutes, defendant was precluded from availing itself of its affirmative defense.

The applications for the policies were dated September 28, 1948, and were signed by the insured. In both said applications insured stated that his occupation was "Athletic Director". Plaintiff testified that the applications were signed by her husband in Herrin, Illinois, and that the policies were delivered to insured in Herrin. She further stated that her husband was on September 28, 1948, director of the Herrin Recreation and Athletic Club located at 207 North Park Avenue in Herrin, Illinois, and that he received no compensation except in his capacity as athletic director of said club.

The Herrin Recreation and Athletic Club, Inc., is a corporation organized under the laws of Illinois June 3, 1947. Its certificate of incorporation shows that it was organized under the "General Not For Profit Corporation Act" of the State of Illinois. The purposes for which the corporation was organized, as recited in the articles of incorporation attached to the certificate of incorporation were: "the establishment and operation of a social and athletic club for the mutual social intercourse and benefit of its members in social, recreational and athletic activities to be engaged in at its clubrooms and headquarters in said city of Herrin and at such other place or places in Williamson County, Illinois, as may be determined upon by its members or directors from time to time."

Insured was shot September 24, 1950, and died shortly thereafter. James Scott was with him at the time. The shooting took place late at night, in front of the Russo Night Club in Herrin. Scott and insured were at the time in an automobile preparing to leave the premises. Scott testified that during the time he was with insured that night the latter had no trouble with

anyone, and that he did not know who the persons were who fired the shots.

Appellant's first complaint is that the court erred in excluding evidence of insured's occupation at the time he made application for the policies. The assignment does not specifically point out the evidence excluded, the court's rulings, or the offers of proof made. However, we have searched the record and have found that the court excluded certain evidence offered by defendant in support of its affirmative defense, which is apparently the basis of appellant's complaint. By this evidence defendant sought to show that insured's occupation was that of gambler, in addition to being an athletic director. The first attempt along this line was when plaintiff was on the stand. On cross-examination plaintiff was asked the following question:

"Q. Do you, of your own knowledge, know whether your husband was engaged in any gambling activities as a means of livelihood?"

An objection to this question was sustained by the court, whereupon the following offer of proof was made by defendant's counsel.

"Mr. Gaebe: If permitted to answer, the witness would testify as follows: That the insured was a gambler, in addition to his occupation as athletic director, at the time the applications were signed by the insured; and, that these answers are material and relevant, and within the witness's own knowledge."

To the foregoing offer, plaintiff's counsel objected, on the ground that the testimony was inadmissible under Section 766 of Chapter 73, Illinois Revised Statutes. This objection was by the court sustained. Notwithstanding this ruling of the court, the following testimony was elicited from the witness by defendant's counsel:

"Q. (By Mr. Gaebe, resuming) Mrs. Armes, do you know whether your husband had any source of income, other than this Herrin Athletic Club, on September 28, 1948? A. No.

\* \* \* \* \* \*

"Q. And so far as you know, that was the only source of income; that is, the Athletic Club? A. Yes.

\* \* \* \* \* \*

"Q. What is an 'Athletic Director', Mrs. Armes, in your opinion? Since your husband was one, what was he? A. Well, he was just in charge of all the recreation there.

\* \* \* \* \* \*

"Q. Does gambling include athletics, Mrs. Armes? \* \* \* A. Well, I wouldn't think so."

Mr. Theodore C. Link testified as follows:

"Q. Had you ever been in the Herrin Athletic Club in 1948, Mr. Link? A. Yes, sir.

\* \* \* \* \* \*

"Q. Was that an Athletic Club? \* \* \* A. It was not.

\* \* \* \* \* \*

"Q. Within your own knowledge, Mr. Link, what was this Herrin Athletic Club in 1948, when you saw Roy Armes?

\* \* \* \* \* \*

"Mr. Lewis: We object to that, first, because he hasn't shown he has any such knowledge; second, it dosen't confine the time; and third, under the law of Illinois \* \* \* Section 766, it would be inadmissible.

"The Court: Sustained.

\* \* \* \* \* \*

"Q. Was Roy Armes an athletic director?

"Mr. Lewis: Objected to; repetition.

\* \* \* \* \* \*

"The Court: The objection will be sustained.

\* \* \* \* \* \*

"Mr. Gaebe: It is my offer of proof that if the defendant's witness, Mr. Link, were allowed to testify to the question of whether or not Mr. Armes

was an athletic director in 1948, his answer would be 'No'.

\* \* \* \* \* \*

"Mr. Lewis: I object to the offer of proof for the same reasons stated before.

"The Court: Sustained.

\* \* \* \* \* \*

"Q. Mr. Link, do you know of your own knowledge whether Mr. Armes was a gambler?

"Mr. Lewis: Objected to for the same reasons heretofore stated, to the same line of questions.

"The Court: Sustained.

"Mr. Gaebe: Let the record show that the same offer of proof is hereby made to this question as was made to the prior question.

"The Court: Is it your statement that he, of his own knowledge, would so testify? Other than the offer of proof?

"Mr. Gaebe: Yes; that was the very question I asked him—of his own knowledge.

"Mr. Lewis: We object to the offer of proof for the same reasons stated before.

"The Court: Sustained."

Defendant's counsel also offered, and the court excluded, certain records of the St. Louis Police Department. These records were described by defendant's counsel as: "a letter from the Bureau of Criminal Identification and Investigation, Springfield, Illinois, dated November 8, 1947, to Chief of Police O'Connell of the City of St. Louis, Missouri, marked by the reporter as 'Defendant's Exhibit B, E.E.C., 12/16/52'. \* \* \* A fingerprint record of Jack Marshall, alias Roy Armes, marked by the reporter as 'Defendant's Exhibit C'. \* \* \* A photograph of Roy Armes, No. 11112, marked as 'Defendant's Exhibit D'. \* \* A newspaper clipping from the St. Louis Globe-Democrat dated September 25, 1950 \* \* \* marked \* \* \* 'Defendant's Exhibit E', \* \* \* and a newspaper clipping of the St. Louis Globe-Democrat dated September 27, 1950, \* \* \* marked 'Defendant's Exhibit F', \* \* \* ."

■ There was no error in the exclusion of the foregoing evidence. It is conceded that the insured's application was not attached to the policies. Section 154 of the Insurance Code of Illinois, Sec. 766, ch. 73, Smith-Hurd Annotated Statutes, provides:

"No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefor, of which a copy is attached to or endorsed on the policy, and made a part thereof. \* \* \* This section shall not apply to policies of marine or transportation insurance."

■ The language of this section is clear and unambiguous, and clearly applicable to industrial life insurance, such as were the policies in the case at bar.

The defendant relies upon the case of Anderson v. John Hancock Mutual Life Insurance Co., 316 Ill.App. 338, 45 N.E.2d 39. The case is not in point on the issues on this appeal. In that case the defense was breach of the sound health warranty contained in the policy, and not false and fraudulent misrepresentation in the inducement of the contract, as in the case at bar. The court there held that the defense was not precluded by reason of the failure of the company to attach the application to the policy. A like holding was had in Moore v. Metropolitan Life Ins. Co., 299 Ill.App. 627, 21 N.E.2d 16. Neither case rules the case at bar. The case of Continental Assurance Co. v. Henson, 297 Ky.

764, 181 S.W.2d 431, also relied on by defendant, is not controlling. The principles there applied are, in our opinion, not sound.

In passing, we might add that the police records hereinbefore mentioned, sought to be introduced by the defendant, were clearly hearsay and, for that reason, inadmissible.

The further point is made that evidence was admissible to show that insured's death was not accidental, but, to the contrary, was caused by the insured's activities as a gambler.

If one insured is engaged in the pursuit of gambling and is shot and killed, it cannot be reasonably inferred from such fact, standing alone, that the fatal result was a natural and probable consequence of insured's misconduct, so as to prevent recovery on an accident policy, on the theory that death was, in effect, invited.

It is not shown that insured was engaged in any unlawful conduct at the time he was killed, or that he had, prior to the incident, done anything to provoke the assault. The fact that he was a gambler—if such were a fact—would not relieve the company from liability under its policy, which insured against death by accidental means.

Appellant complains of Instruction No. 1, given at the request of plaintiff. This was a verdict-directing instruction which did not submit the alleged issue of misrepresentation in the procurement of the policy and, for this reason, it is urged that the instruction was erroneous. What we have said in disposing of appellant's first point is applicable here; the defense being precluded by the statute. Illinois Revised Statutes 1949, Chapter 73, Sec. 766. We hold the instruction was proper.

Appellant next assails Instruction No. 2. Said instruction charged the jury as follows:

"The Court instructs the jury that the intentional killing with a deadly weapon of one human being by another is death by accidental means, unless you further find and believe from the greater weight of the evidence that the person so killed caused or provoked such intentional killing. The court further instructs the jury that if they find and believe from the evidence that Roy W. Armes was intentionally killed by another person, unless you further find and believe from the evidence that such killing was caused or provoked by Roy W. Armes, such killing constituted bodily injury through external, violent and accidental means, which resulted, independently of all other causes, in the death of said Roy W. Armes, within the meaning of the policy sued upon in this case, and notwithstanding the action of such person in killing said Roy W. Armes was intentional on the part of such person."

The complaint against this instruction is that it precluded the jury from finding that the death of the insured was the natural and probable consequence of his own act or course of action, and that the phrase "caused or provoked" improperly confined the jury to a determination of the proximate cause of insured's death.

The instruction is not subject to the criticism leveled against it, because there was no evidence from which a jury could reasonably find that insured's death was. the natural and probable result of his own act or course of action, either proximate or remote.

Plaintiff's counsel in his argument, after referring to the evidence of James Scott, which evidence tended to show that insured's death was accidental, and after calling attention to the fact that defendant, who had the burden of proving that insured provoked the assault, stated:

"Now, shortly after the death they tried to pay this claim; they tried to welsh on it * * *. Sure they tried to welsh on it. Didn't they send her this check for $1,020.16? This gentleman that testified, Mr. Suter, said 'Yes,' he sent the check himself, $1,020.16,

and on the back of it you will note \* \* \* 'The undersigned hereby releases the Missouri Insurance Company from all liability on account of the claim or demand referred to on the reverse side hereof.' Now, they wanted Mrs. Armes to endorse that and give them a complete release on that claim against the insurance company, and they sent it out mighty fast; they sent it out on October 9th \* \* \*. And on the reverse side it shows it is payment in full on both policies. They were trying to welsh; of course they were. \* \* \* Why did you mail out that check? Mr. Gaebe asked him yesterday, 'Why did you do that, mail out the check for ordinary death?' and he said, 'We had no notice there was an accidental death.' And then we had to confront him with this proof of loss and this coroner's certificate of death, which he had in his own hands before he ever issued the check, and he had to admit, he did admit finally on cross-examination that he had read the certificate and had read the proof of loss, and did not issue the check until he had read them, and that all that said was, 'Gunshot wound inflicted by party or parties unknown to this jury in front of Russo's Tavern on Road District 82, Williamson County, Illinois.'

"Now what are they trying to do? Are they trying to cover up? Why didn't he, on direct examination testify he knew what kind of death this was? I don't know, except I know they tried to welsh on their contract. They tried to pay her just half of what they owed her, and she insisted on being paid what she was entitled to."

Several times during the argument objections were interposed by defendant's counsel, which objections were overruled by the court. The first objection made was that the statement that defendant "welshed" on its agreement was a conclusion of plaintiff's counsel which he should not be allowed to make. The second objection was that the reference to the release on the reverse side of the check was improper, because plaintiff's counsel knew that it would not operate as a waiver of plaintiff's right to make claim for the accidental death benefit; counsel stating: "Now, Mr. Lewis has stated the law on several occasions. Let him state what the law is in reference to a settlement in a case like this."

■ No complaint was made with reference to the foregoing argument in defendant's motion for new trial, and now, for the first time, defendant on this appeal contends that the argument was improper for the reason that it had no basis in the evidence and was calculated to inflame the minds of the jurors and prejudice them against defendant.

Our Supreme Court has, pursuant to the authority given it by Section 506.030 RSMo 1949, V.A.M.S., Laws of 1943, Sec. 10, page 359, promulgated Rule 3.23, as follows:

"Allegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for new trial; except questions of jurisdiction over the subject matter, questions as to sufficiency of the pleadings to state a claim or defense, questions of the sufficiency of the evidence to support the judgment in cases tried as provided by Section 114, questions authorized by Section 113 to be presented in a motion for judgment, questions authorized by Section 114(c) to be presented in a motion to amend the judgment and opinion, or questions under Section 99 (b) authorized to be presented in a motion to set aside a dismissal. \* \* \*" 42 V.A.M.S.

The matter urged here does not fall within any of the exceptions specified in the aforesaid rule, hence we are precluded from reviewing said matter, unless we do so under Rule 3.27 of the Supreme Court Rules. Rule 3.27 provides that we may, in our discretion, consider plain errors affecting substantial rights, though not raised in the trial court or preserved for review, when the

880

court deems that manifest injustice or miscarriage of justice has resulted therefrom. No manifest injustice could have resulted from this argument, even assuming it to be improper, for the reason that no other verdict than that rendered could have been considered just under the evidence adduced. The situation is not one calling for the application of Rule 3.27, supra.

Appellant also complains of the following argument:

"Of all the defenses set out with unmitigated gall and flights of imagination, in any case I have seen tried, this is about the worst. I don't know how you lady and gentlemen feel about this company; but, after hearing the evidence in this case, I wouldn't want any of their insurance, and I don't think there is a person on this jury who would want insurance from a company like that."

Defendant objected to the foregoing argument, which objection was by the court sustained, and the court withdrew said argument from the jury's consideration. No complaint with reference to the argument was made by defendant in its motion for new trial.

Assuming that the argument was improper, we are not authorized to disturb the verdict and judgment for that reason, in view of the condition of the record. We cannot convict the trial court of error where its rulings are not adverse to the party complaining, Montana v. Nenert, Mo.App., 226 S.W.2d 394; or consider alleged error not preserved in the motion for new trial, unless reviewable under Rule 3.27, supra. The contention made clearly presents no occasion for its consideration under said rule.

We find no reversible error in the record. The judgment of the trial court is affirmed.

BENNICK, J., and ADAMS, Special Judge, concur.