**CITY OF WEBSTER GROVES, a Municipal Corporation (Plaintiff), Respondent,**

v.

**Preston QUICK (Defendant), Appellant.**

No. 30317.

St. Louis Court of Appeals.

Missouri.

April 21, 1959.

George M. Andrews, Preston Quick, St. Louis, for appellant.

H. Jackson Daniel, Shulamith Simon, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for respondent.

ANDERSON, Judge.

This case arose upon the filing of a complaint against defendant in the City Court of Webster Groves, Missouri, for the violation of a speed ordinance of said city. Defendant was found guilty in said court and thereafter appealed to the Circuit Court of St. Louis County. A trial was had in the Circuit Court resulting in a verdict and judgment finding defendant guilty as charged and assessing as punishment a fine of $10. From this judgment, defendant appealed to the Supreme Court on the theory that because he was convicted on the readings of an electric timer his constitutional rights had been invaded, contrary to Article 1, Sections 10 and 18 (a) of the Missouri Constitution, V.A. M.S.; the Fifth Amendment of the Constitution of the United States; and the Sixth Amendment of the Constitution of the United States. The Supreme Court, in an opinion, 319 S.W.2d 543, held that appellant's purported constitutional issues were without substance and colorable only, and transferred said cause to this court.

On March 4, 1957, about 8:00 o'clock a. m., appellant was driving westwardly on Kirkham Boulevard in Webster Groves. As he proceeded westwardly he was driving toward a parked police car which was headed eastward. When appellant reached a point about opposite the police car he was stopped by a police officer and informed he was driving 40 miles per hour in a 30 mile an hour zone. Appellant was advised that an electric timer which was operated by the police showed he was driving at that speed.

The electric timer consists of a control panel which contains a stop watch, a switch and a reset button. In addition, there is a cable, 500 feet long, that plugs into the box. There are two rubber tubes which stretch the width of the street. There are two mercury switches to which the tubes are connected and which are in turn connected to the electric cable, and four weights to anchor the tubes across the street. In the middle of these rubber tubes is a plug to prevent eastbound traffic from having any effect on the unit when the mechanism is set for timing westbound traffic. When laid out for operation the rubber tubes are placed across the street 132 feet apart. The mercury switches to which the tubes are connected are in turn connected to the electric cable which runs from the first tube to the control box on the police car. The first tube is located 500 feet east of the parked police car, and the second tube 368 feet east of said automobile. The police car in the instant case was placed at a point where both tubes could be observed by the occupant of the police car. As the officer sitting in the car observes a car approaching which he wishes to clock he sets the switch on the control panel which opens the first tube. When the tires of the approaching car pass over that tube it activates the mercury switch, which starts a stop watch located in the police car. The switch is then closed to the neutral position, and any automobiles following the car which crossed the first tube have no effect on the unit. Then, as the clocked automobile approaches the second tube, the switch is thrown to the right, which is the control on the second tube, and when the tires of the automobile being clocked run over the second tube it stops the clock. Around the outside of the clock is a calibrated scale laid out in miles which indicates the miles per hour the automobile being observed is traveling. From the point at which the speed of the automobile is indicated on the clock to the police car there is a distance of 368 feet.

A certified steel tape is used to measure the distance between the two tubes to in-

sure that they are laid out exactly 132 feet.

The speed watch device, which had been in use in the city regularly during the two and one-half years before the date of the trial, is checked each day when it is put out by driving a police department vehicle through it at varying speeds. The speedometer reading of the vehicle is checked with the reading of the speed watch. This was done on the day of defendant's arrest. The arresting officer testified he saw no reason why atmospheric disturbances could affect the accurate operation of the machine.

The clock, which is a unit itself, the size of a pocket watch, is checked for accuracy the first week of each month by a watchmaker and jeweler of twelve years' experience. It is the same type of watch used in timing sports, and is tested against the standard of the National Bureau of Standards. The watch is started on a tone put out by the National Bureau of Standards, and is stopped on the tone. The watchmaker checks to see if the watch has the required number of seconds in those tones. The signals of the National Bureau are accurate to one fifty thousandth of a second each twenty-four hours. The watchmaker who testified in this case had never heard of any of the relays of this current or beam being wrong. That is the time used by the Government, and all our ships at sea, and the Air Force, set their watches by it.

On March 4, 1957, the day defendant was arrested, the weather was cool and dry. It was daylight at the time. The police car was parked within the triangle which is formed by the intersection of Gore Avenue and Kirkham Boulevard, and was facing east. The first tube was laid out approximately two blocks east of Gore Avenue, a north and south street, and the second tube 132 feet west of the first tube. The distance between the two tubes was measured with a steel tape. The timer was in the police car approximately 500 feet west of the first tube. The police officer sitting in the police car could see the two tubes and approaching traffic. The device was tested that morning by driving a motorcycle through the area and over both tubes.

The arresting officer, Maurice Paillou, who was sitting in the police car, observed defendant's car approaching from the east. He decided to clock the speed of defendant's car. The officer activated the first tube shortly before defendant crossed it. He saw defendant's car cross the first tube and saw the stop watch start to operate. He then activated the second tube and as defendant crossed the latter the officer observed the stop watch come to a stop. A reading of 40 miles per hour was indicated on the stop watch. The officer then stepped out of the car, flagged down defendant and invited him over to the police car where he showed defendant the reading on the dial and explained to him how the machine worked.

On cross-examination, the police officer testified that there were no other cars on either the eastbound lane or the westbound lane when defendant came through the unit. He could see eastward approximately six to seven hundred feet. He was visually aware of the fact that defendant was traveling at a speed in excess of 30 miles per hour.

Meryle Mikel, a jeweler, testified he checked the watch mechanism during the first week in March, 1957, and found it to be accurate. He also testified he had checked the watch mechanism during the first week of February, 1957, and found it accurate.

Del Reinemer, a Webster Groves Police Sergeant, testified he had taken the stop watch to Mr. Mikel in the first week of February, 1957, the first week of March, 1957, and again in the first week of April, 1957.

Defendant denied he was going over 28 to 30 miles per hour, stating that his re-

cently tested speedometer showed a reading between those figures.

■ Appellant's first point is that the court erred in permitting Police Officer Paillou to testify as to the readings of the electric timer showing defendant's speed at 40 miles per hour, for the reason that it constituted hearsay evidence.

■ There is no merit to the point made. The officer himself testified to the reading of the mechanism in question and not to what someone else had told him; thus, the hearsay rule does not apply. The witness when testifying was under oath, and was thoroughly cross-examined, thus satisfying the principal requirements of the hearsay rule. Evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to be produced. It is an extra judicial utterance, including both oral statements and writings. The hearsay rule cannot be applied to what the witness, on the stand and subject to cross-examination, observed, either through his own senses or through the use of scientific instruments. If appellant's contention were sound then results of the use of a measuring device on some object to ascertain its length would be inadmissible; a doctor could not testify to what a fluoroscope revealed concerning the condition of his patient, and, likewise, he would not be permitted to testify as to the results heard through a stethoscope. Many other examples of the absurdity of such a rule could be cited. In such cases, as in the case at bar, the evidence as to the results obtained by the witness is not dependent on the perception, memory, and sincerity of an absent declarant. The circumstantial guarantee of trustworthiness is satisfied by the exercise of the right of cross-examination of the witness on the stand, both as to the results obtained and his testimony as to the reliability and accuracy of the device used. As to the latter, there was sufficient evidence in the case at bar. A police vehicle was operated through the device the morning defendant was arrested, and the device was found to be operating properly. In addition, the stop watch was tested during that week and the first week of the preceding and subsequent months. The witnesses to those facts were produced and were subjected to rigorous cross-examination. We rule there was no error in the court's ruling on the admission of the evidence in question. State of Missouri v. Graham, Mo.App., 322 S.W.2d 188.

■ Appellant's next point is that his constitutional rights under Article 1, Sections 10 and 18(a) of the Missouri Constitution, and the 6th Amendment of the Constitution of the United States, were violated by permitting the police officer to testify as to what he read on the electric timer. This point was decided against appellant by our Supreme Court in City of Webster Groves v. Quick, 319 S.W.2d 543. That decision is binding on this court.

■ Appellant's next point is that the court erred in refusing to admit into evidence defendant's Exhibit 1, being an arrest notification given defendant by the police officer. Its relevancy is urged for the reason it is shown that it charged defendant with "C & R", which charged no legally recognized offense.

Appellant is in error in stating that the court refused to admit the document in evidence. The record shows that the court overruled plaintiff's objection to it. We find no merit to the proposition that the prosecution was illegal for the use of "C & R" in the notice. The formal complaint on which defendant was charged and on which he appeared and defended against alleged that defendant on the day in question "did then and there willfully and unlawfully drive and operate upon a public street in the City of Webster Groves, Missouri, to wit, west on Kirkham Avenue, a certain motor vehicle, in a careless and reckless manner by driving and operating the same at the aforesaid time and place

40 M.P.H., contrary to and in violation of the provisions of Section 717B of the Revised Ordinances of the City of Webster Groves, Missouri, 1939, and against the peace and dignity of the City of Webster Groves, Missouri."

The complaint was sufficient in law to charge an offense under the ordinance, and sufficiently notified defendant of the nature of the charge. State of Missouri v. Graham, supra. Any infirmity in the notice handed defendant was cured by the filing of a proper complaint, and defendant's appearance and defense against it.

■ Appellant's next contention, as we understand it, is that it was error to permit evidence of the accuracy of the stop watch for the reason that when the test of it was made the watch was not connected with the timer cable and hoses similar to the way it was laid out the morning of defendant's arrest. We fail to see any merit to this contention. The accuracy of the stop watch in keeping time would, as we see it, depend upon its own mechanism and have no relation to the other parts of the equipment. It was a unit itself.

■ The next point is that the court erred in refusing defendant's requested Instruction A. Said instruction was as follows: "The Court instructs the jury that they are not to take into consideration any evidence any witness offers which was obtained by a device known as an electric timer." It is urged that the instruction should have been given: (1) because said evidence constituted hearsay, and (2) because of the time interval between the date of inspection of the timer and the day the equipment was set up for defendant's arrest. This assignment of error is not carried forward in the printed argument in appellant's brief, and is therefore waived. Hanser v. Lerner, Mo.App., 153 S.W.2d 806; Geisendorfer v. Geisendorfer, Mo. App., 227 S.W.2d 470; Rafferty v. Levy, Mo.App., 153 S.W.2d 765; City of St. Louis v. Butler, Mo.App., 223 S.W.2d 831;

Porter v. Fickenwirth, Mo.App., 217 S.W. 2d 738; Stevens v. Dickey, Mo.App., 222 S.W.2d 563. However, there seems to be no merit to the point made. What we have said in disposing of Point 1 is applicable to the contention that Instruction A should have been given because the evidence sought to be withdrawn was hearsay. As to the other proposition that Instruction A should have been given for the reason of the time lag between the inspection of the timer and the date on which the equipment was set up on March 4, 1957, it is sufficient to say that such fact merely presents a jury argument, which no doubt was made.

Appellant's next point is that the court erred in admitting the evidence of the police officer that he could visualize the speed of defendant's automobile when it was approaching 600 to 700 feet to the east of the police car, for the reason that such evidence was speculative and physically impossible.

■ The only evidence to the effect that the police officer visualized the speed of defendant's car as in excess of 30 miles per hour, given by the witness on direct examination, was stricken from the record on defendant's objection. On cross-examination by defendant the police officer did say that he could estimate the speed of the on-coming car within five miles per hour of its actual speed, and that he could tell "visually that the car was traveling at an excessive rate of speed," and that he "formed the opinion that you (defendant) were traveling in excess of 30 miles per hour." Having brought out the testimony himself, defendant is in no position to complain of its reception in evidence. Thompson v. Arthur L. Hardin Associates, Inc., Mo.App., 219 S.W.2d 860; Armes v. Missouri Insurance Co., Mo.App., 263 S.W.2d 873. We cannot say, as a matter of law, that the officer testified to an impossibility. It takes a strong case to authorize a court to declare sworn testimony as manifestly impossible or untrue. Schupback v.

Meshevsky, Mo.Sup., 300 S.W. 465. The matter before us does not present such a situation.

It is next urged that defendant's requested Instruction A should have been given for the reason that it was a physical impossibility for the police officer to flag down defendant in 2.2 seconds—the time defendant would have taken to travel the 132 feet from the second tube to where the police car was located. Appellant is in error in stating it was 132 feet between the police car and the second tube. Actually, the distance was 368 feet. In his reply brief and at the oral argument appellant's counsel conceded this error but maintained that it was a physical impossibility for the police officer to have flagged down defendant in the time required to travel said 368 feet. At the speed defendant was alleged to be traveling it would have taken him approximately 6¼ seconds to travel said distance. Whether it was a physical impossibility for the police officer to set the dial, get out of his car and flag down defendant in that time would be a jury question and not one for the court as a matter of law. Schupback v. Meshevsky, supra.

Finally, it is urged that the court erred in refusing appellant's offered Instruction 4, for the reason that plaintiff failed to prove its case by a preponderance or greater weight of the credible evidence. There is no defendant's instruction No. 4 shown in the transcript. Furthermore, the weight of the evidence is for the jury in the first instance, and the trial court on a motion for new trial. We cannot reverse a case because it might be against the weight of the evidence. Bloch v. Kinder, 338 Mo. 1099, 93 S.W.2d 932; Hogsett v. Smith, Mo.App., 229 S.W.2d 20; Renfro v. Lazerine, Mo.App., 298 S.W. 1067; King v. City of St. Louis, Mo.App., 155 S.W.2d 557; Fisher v. John Hancock Mutual Life Ins. Co. of Boston, Mass., Mo.App., 229 S. W.2d 246. We find there was substantial evidence to support the verdict of the jury in this case.

Taken with the case was a motion filed by respondent to dismiss the appeal for the reason appellant's brief failed to comply with Supreme Court Rule 1.08, 42 V.A. M.S. This motion is overruled.

Finding no error in the record, the judgment appealed from is affirmed.

WOLFE, P. J., and RUDDY, J., concur.