THE STATE v. BUGG TODD, Appellant.—116 S. W. (2d) 113.

Division Two, May 3, 1938.

*Henry C. Walker* for appellant.

*Roy McKittrick*, Attorney General, and *Aubrey R. Hammett, Jr.*, for respondent.

COOLEY, C.—Tried in the Circuit Court of Stoddard County, on change of venue from Dunklin County, appellant, defendant below, was convicted of murder in the second degree, sentenced to twelve years' imprisonment in the penitentiary and has appealed. The homicide is admitted, the only defense offered being temporary insanity.

The State's evidence tended to show the following:

Defendant, with a shotgun, shot and killed his son, Nyman Todd, on the night of April 14, 1935, at defendant's home. Defendant came home that night about ten o'clock, apparently somewhat under the influence of intoxicating liquor. His eldest daughter, Lorie, had gone to bed upstairs but was not yet asleep. Two younger children and defendant's wife were at home. One a son, Norvil, was in bed in an upstairs bedroom. Lorie and Norvil both testified for the State. The youngest son, a child too young to testify, was in bed with his mother in a downstairs bedroom. Lorie's attention, according to her testimony, was attracted by hearing her mother call for Nyman (the deceased). She went downstairs, finding her father with a shotgun in his hands pointed at his wife. She tried ineffectively to get the gun away from him or get him to put it away. About this time Nyman appeared on the scene. It appears that Nyman was married and lived a short distance, perhaps a half mile or so, from his father's residence, and that on the night in question he and a friend, Orbie Hogan, had attended church together. After church they were going to Ny-

man's home or perhaps to defendant's home, it is here immaterial which, when about a half quarter of a mile from defendant's residence, their attention was attracted by hearing defendant cursing and hearing some member or members of the family screaming, these sounds coming from defendant's residence. Nyman hurried to the place, followed by Hogan who arrived immediately behind Nyman. Hogan testified that Nyman went up on the porch and asked defendant, who then had the gun in his hands, what the trouble was about, receiving no answer, so far as shown; that Nyman then asked him,— Hogan—to come and take the gun away from defendant, saying that "he won't shoot you," whereupon defendant said, apparently to Nyman, "You are just a God Damn fool. I will shoot you," and immediately shot Nyman, inflicting a mortal wound from which Nyman died within a few minutes.

There was evidence to the effect that at times defendant had mistreated his wife, mostly at times when he was drinking; that some thirty days or so before the homicide Nyman had told,—or "warned" —defendant not to again mistreat his, Nyman's mother and that defendant had then said to Nyman, "I will kill you if you ever inter- fere with me in anything."

The evidence indicates that, when sober, defendant was not a bad or troublesome man and generally treated his family reasonably well, but when under the influence of liquor was at times abusive to his wife, perhaps to others.

On behalf of defendant, his wife testified that he came home the night of the homicide, apparently sober and in good spirits, said he wanted only some milk for supper and upon being told by her where it was procured and drank some of it; that a sudden change seemed to come over him; that he approached the bed in which she and the little boy were, having a knife in his hand, telling her he had killed a man and the law was after him and wanted her to see the blood on his knife; that he then procured the shotgun from the wardrobe. (He had not killed or tried to kill anybody.) Her testimony in substance was that he was not drunk but appeared to be crazy; further that he had had spells of that kind before, had himself, when sober, indicated that he feared he might be becoming mentally deranged or about to become so and had suggested consulting certain named friends with the view of seeing if some steps should be taken relative to such feared condition; and that that matter had been discussed between them in the presence of the children. A physician, called by defendant, testified in substance, in answer to a hypothetical question based upon Mrs. Todd's testimony, that defendant, at the time of the homicide, was suffering from hallucinations and (in substance and effect), was temporarily insane; but he further testified that he had not examined the defendant and, in effect, that there was hardly enough in the

testimony he had heard to enable him to pronounce definitely as to defendant's mental condition at the time of the homicide.

Defendant, testifying for himself, said he had taken two drinks that day but was sober when he came home. He remembered eating his supper or "part of it," but did not remember anything about getting the shotgun or shooting his son. He remembered seeing and talking a few words with the boy after the latter was shot and then his memory again became a blank until about when officers arrived, which other evidence showed was a short time later. Nyman was then dead. Defendant said he was eating his supper when "the last thing I remember it just seemed like something crushed me down and I remember starting to jump out of my chair but I don't remember whether I got up or what I did and that is the last I knew." He said he had not had exactly that sensation before but had had some "very peculiar feelings" at times and had discussed same with his wife and with Nyman, and had told his wife that if he got "totally crazy" to go to certain friends, the ones she had named.

The foregoing sufficiently outlines the facts. If necessary further facts will be stated in the course of the opinion.

█ Appellant has filed no brief here so we must look to his motion for new trial for the points on which he seeks reversal. The first three points, viz., that the verdict is "against the evidence and the weight of the evidence," that it is the "result of passion and prejudice," and "that it is not supported by the testimony and there is not sufficient . . . evidence of the guilt of the defendant," may be considered together. The first two assignments can hardly be said to be sufficiently specific. [State v. Bagby, 338 Mo. 951, 93 S. W. (2d) 241, 246.] Furthermore the weight of the evidence was for the jury and there is no indication in the record of passion or prejudice on the part of the jury. The third assignment seems intended to challenge the sufficiency of the evidence. It cannot be sustained. There was ample evidence to justify submission of the case to the jury and to support the verdict.

█ The fourth assignment in the motion for new trial, that the court erred in giving "instructions Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11," because they did not "declare the law of the case as made by the testimony," without further specification or explanation and stating no reasons has so often been held too general and indefinite to present for review the instructions or claimed errors therein since the enactment of present Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275), that further citation of decisions is unnecessary. Those interested will find many cases so holding in note 13 to said section, Mo. Stat. Ann., page 3281 et seq., where many cases by this court are cited.

■ It is contended that the court erred in permitting the prosecuting attorney to state to the jury in his opening statement that he expected to prove that "immediately prior to the shooting of the deceased by the defendant the deceased had reprimanded defendant about the treatment of his (the deceased's) mother." In State v. Lindsey, 333 Mo. 139, 62 S. W. (2d) 420, 422 (3-7), we said, "The rule is well settled that the opening statement of the prosecuting attorney is not error if he acts in good faith and with reasonable grounds for supposing that he can prove the facts stated. The trial court has a wide discretion in determining whether the prosecuting attorney is acting in good faith." (Citing authorities.) In the instant case there can be no question as to the prosecuting attorney's good faith. His statement, as shown by the record, was that Nyman, not "immediately" before the shooting but a "short time, . . . within a year or two years" previously, had so "reprimanded" defendant. Defendant's counsel objected to that "as too remote if it was within a year or two years." The court at first overruled the objection, but this followed: The prosecuting attorney stated that the evidence would show that Nyman "had reprimanded" and had had some trouble with his father prior to the shooting because of the mistreatment by defendant of deceased's mother, and had told defendant he should not ever mistreat deceased's mother any more. Defendant renewed his objection, which was then by the court *sustained.* No further reference to that matter was made by the prosecuting attorney and no further ruling or action was requested by the court. It appears clear from the evidence introduced that the prosecuting attorney's statement had reference to the testimony, subsequently introduced, to the effect that some thirty days or so,—a "short time"—before the homicide, deceased had told—or "warned,"—defendant not again to mistreat deceased's mother and had been by defendant threatened with death if he ever "interfered" with defendant,—evidence which we think was clearly competent, as tending to show the feelings of defendant and deceased at the time of the homicide, and as bearing upon the question of motive. That said conversation between defendant and his son, occurring only some thirty days or so before the homicide, was not "too remote" to be admissible needs no discussion or citation of authorities. If "remote" at all, such remoteness, brief as it was, went only to the weight, not to the admissibility, of that testimony.

■ Several assignments of error are predicated upon the admission of evidence offered by the State tending to show that defendant, on the night in question, was under the influence of intoxicating liquor. The objections to this line of testimony, as made at the trial and preserved in the motion for new trial, seem to go to the qualification of the witnesses to testify as to defendant's condition rather than to the competency of such proof. Some of the objections, how-

ever, were on the ground that drunkenness was not "pleaded as a defense," was not an issue in the case, and that evidence thereof would be prejudicial to defendant. We have concluded to treat these several assignments together, and decide them on the merits, waiving any technical insufficiency in some of them. The question thus presented is, was such evidence, introduced by the State over defendant's objections, incompetent and prejudicial to defendant in the circumstances of this case? We think not.

The learned Assistant Attorney General who briefed the case here confesses that he has not been able to find a Missouri case in which this precise question was discussed and decided, nor have we been able to find such case. We find that in State v. Lloyd (Mo.), 217 S. W. 26, wherein felonious assault was charged, the State's evidence tended to show that the defendant was under the influence of intoxicating liquor at the time of committing the offense, and, testifying for himself, he so stated. The conviction was affirmed. It does not appear, however, that any objection was made to the introduction of such evidence and the point is not discussed in the opinion. In a number of cases we have held that voluntary drunkenness does not excuse crime committed by one while in that condition (see State v. Barr, 340 Mo. 738, 102 S. W. (2d) 629, 634, and cases cited); and that drunkenness is inadmissible either to show that no crime was committed or to reduce its grade. [State v. Sneed, 88 Mo. 138.] In those cases, however, drunkenness was urged by the defendant in excuse or palliation of the crime charged. They do not reach the precise point here presented. This question was considered by the Court of Appeals of Georgia, in Johnson v. State, 148 S. E. 610, wherein the defendant, charged with murder was convicted of voluntary manslaughter. The court said:

"The first special ground of the motion for a new trial alleges that the court erred in permitting a witness for the State to testify, over objection, that the defendant was drinking at the time of the shooting. It is a matter of human experience that with many men drinking is at least conducive to violent conduct; and this evidence was admissible to show motive. 'Evidence tending to show motive is always relevant and admissible.' [Wall v. State, 153 Ga. 309 (1), 112 S. E. 142.] And 'the testimony that the accused was drinking at the time of the alleged assault was admissible for the purpose of showing a condition of mind which might have rendered him reckless of consequences.' [Roberts v. State, 9 Ga. App. 810, 72 S. E. 289.]"

Also, in the instant case, defendant's plea was temporary insanity. The question of whether he was temporarily insane at the time of committing the homicide or merely intoxicated from having voluntarily imbibed liquor was material. The State's evidence tended to show

that he was a sane man, peaceable enough when sober but inclined to be violent and abusive when under the influence of liquor. He testified that, though he had had a couple of drinks that day, he was sober at the time in question. His wife's testimony was to the effect that he came home sober, and that a sudden change came over him,— obviously testimony calculated to show temporary insanity. In this situation it seems clear to us that the jurors, who had the duty to determine the facts, had the right to be informed of all facts and circumstances which might bear upon that disputed issue. In the circumstances of this case we think proof of defendant's condition as to whether intoxicated or not was competent.

██ It is assigned as error that the court permitted the constable, who had arrived at the place some twenty or twenty-five minutes after the shooting, to testify that defendant then said to him, ''Bill, I have killed him and I want you to tell Mr. Ford to give me the electric chair as quick as he can.'' The only objection made to the offer of this testimony was that if the statement was made twenty or twenty-five minutes after the shooting it was too late to be part of the *res gestae*. It was not offered as part of the *res gestae* but as a statement against interest and, having been made voluntarily, was competent. That voluntary admissions or statements against interest made by one accused of crime may properly be proved has so often been held that citation of authorities is unnecessary.

██ Witnesses for the State testified to having known defendant well for a number of years and having had opportunity to observe and having observed his conduct and demeanor and that in their opinions he was sane. Error is assigned regarding the admission of this testimony in that the witnesses, being lay witnesses, were not qualified to testify ''in the manner they did testify.'' The assignment in the motion for new trial is somewhat vague,—perhaps too vague to require consideration. But in any event it is without merit. The witnesses, as we have said, had known defendant and had had opportunity to observe him and had observed him over a considerable number of years. If this contention means, as we think it was intended to mean, either that a lay witness may not express an opinion that the subject of inquiry was sane or insane or that he may not express such opinion in any event without first detailing the facts and circumstances on which he bases such opinion, the contention is sufficiently answered by what we said in State v. Barbata, 336 Mo. 362, 379, 80 S. W. (2d) 865, 874 (18, 19).

''It is well settled that a lay witness, giving his opinion that a party is insane, must detail the facts upon which the opinion is based; but if he expresses the opinion that the party is sane, he is not required to detail the facts. This rule is said to rest upon the obvious reason that an opinion a person is insane is based upon abnormal and un-

natural acts and conduct; whereas, an opinion that he is sane is based upon the absence of such acts or conduct." [See, also, State v. Liolios, 285 Mo. 1, 13, 225 S. W. 941, 944; State v. McCann, 329 Mo. 748, 762, 47 S. W. (2d) 95, 99, (9).]

We have discussed the contentions in the motion for new trial that seem to merit consideration. On the only defense offered by defendant the jury found against him and the verdict is supported by the evidence. We find no reversible error in the record. The judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.