STATE of Missouri, Respondent,

v.

John Thomas FISHER, Jr., Appellant.

No. 45791.

Supreme Court of Missouri, Division No. 1.

June 10, 1957.

W. F. Daniels, Fayette, for appellant.

John M. Dalton, Atty. Gen., George E. Schaaf, Asst. Atty. Gen., for respondent.

## HOLLINGSWORTH, Presiding Judge.

By an amended information in two counts filed in the Circuit Court of Howard County, following change of venue from the Circuit Court of Randolph County, defendant was charged with (1) the felonious killing of Joe Donatti and (2) assault upon Joe Donatti with intent to kill with malice aforethought. Prior to trial, count one of the information was dismissed by the State. Upon trial of the second count, defendant was found guilty of assault with intent to kill without malice aforethought and his punishment was assessed at imprisonment in the State Penitentiary for a term of two years. He has appealed from the judgment rendered in conformity with the verdict and in this court urges prejudicial error in the admission of evidence tending to show that, prior to his alleged assault upon Joe Donatti, defendant had drunk intoxicating liquor, had become involved in brawls and had committed assaults upon other persons.

The difficulty out of which this case arose occurred partly within a tavern known as the J-Bar, in Higbee, Randolph County, and partly upon the street immediately out-side said tavern, about 6 p. m., on Christmas Day, 1953. Joe Donatti, aged 77, was severely injured by defendant, aged 24 years, on that occasion. Defendant pleaded self-defense and the trial court instructed the jury to acquit him if it found he had so acted when he injured Donatti.

The State's evidence, the portions of which defendant here complains having been admitted over objection of defendant, tended to show: J-Bar is owned by Pete Donatti and on the date of the difficulty was being operated by Nello Donatti. Pete and Nello Donatti are sons of Joe Donatti. "A little before" six o'clock, Ferd Cooper, aged 50 years, was in the bar. Joe Donatti was also present. The defendant entered, "had a few words" with Cooper, Cooper turned his head and defendant struck him. Nello Donatti took defendant by the arm and, after resistance on the part of defendant, took him to the front door and "put him out". Defendant came back into the bar, insisted upon apologizing to Cooper and offered to buy him "a beer". Cooper declined the beer and defendant asked for a beer for himself. Nello refused to serve him. Ray Bartee came into the bar. As he entered, Joe Donatti was leaving. Bartee stood at the bar. Nello Donatti and defendant were arguing. Defendant "made a pass at Nello" and, in so doing, knocked over a beer that had been served to Bartee. Defendant called Nello "every name under the sun" and left the bar.

About six o'clock, p. m., Arthur Zambelli, then 16 years old and at trial time a member of the armed forces, stood waiting for a friend at a point near the J-Bar. He saw Joe Donatti, his uncle, walking along the street with his head down and saw defendant come across the street (from the side opposite the bar) and strike Joe Donatti in the face, knocking him down. After Joe Donatti was down, defendant kicked him, and the witness ran a distance of about six feet into the J-Bar for assistance. Joe Donatti's hands were in his pockets when defendant struck him and he neither did nor said anything to defendant.

Joe Donatti was carried into the J-Bar. His face was bloody and badly beaten and he was unconscious. Not more than ten minutes had elapsed from the time defendant had left the bar and Joe Donatti was carried into it. Donatti was taken to McCormick Hospital at Moberly. Medical examination revealed fractures of the right hip, the frontal (skull) bone, nasal bone and sphenoid bone and numerous lacerations.

Defendant's testimony, on direct examination, corroborated by his brother, his brother's wife and Ernest Barron, insofar as here pertinent, was: "Well, I was walking out of Donatti's and I met Mr. (Joe) Donatti and he swings at me and I duck him and then I hit him and then kicked him, knocked him down. I don't know if it knocked him down or he just stumbled or slipped or what. * * * I left him laying and went across the street and got in the car and went up to my grandmother's."

On cross-examination, and over the objection of his counsel, defendant testified: He and Ernie Barron spent the day hunting rabbits. He had "about two" drinks of whiskey during the course of the rabbit hunt. Also, on cross-examination, over objection of his counsel, defendant further testified: "Yes, me and Ferd (Cooper) had a few words. * * * I hit Ferd Cooper one time. It staggered him. I never knocked him down.

* * * * * *

"Q. Then when you knocked (sic) Ferd Cooper he put you out, didn't he? A. Him (Nello) and his dad.

* * * * * *

"Q. You referred to Nello's dad? Did you refer to Joe Donatti? A. Yes.

* * * * * *

"Q. And isn't it true that Nello and his father put you out and you had had, as you said, a little whiskey to start with and it enraged you and you got mad? Isn't that right? A. I didn't say I got mad.

"Q. What would you say as to your attitude? A. Well, we just got into it.

"Q. Then you do admit that you got mad? A. No.

* * * * * *

"Q. You didn't like it, did you? A. I didn't like it, no, sir. * * *"

In support of his contention that prejudicial error was committed in permitting counsel for the State to interrogate him as to his activities and drinking prior to the assault, defendant cites State v. Slaten, Mo., 252 S.W.2d 330, 334, and State v. Duncan, Mo., 254 S.W.2d 628, 629. In the Slaten case, the State's evidence tended to show that the defendant, while in a drunken condition, murdered another, in the City of St. Louis, in March, 1950. Defendant pleaded, it seems, both accidental killing and self-defense. Upon cross-examination, he was interrogated relative to some trouble he had gotten into in Illinois in 1949, while in a drunken condition in a tavern. This court held, as, of course, it should, that such questioning was improper, but that, no proper objection having been made, it was not so inflammatory as to require reversal. In the Duncan case, defendant's own witness, upon direct examination, testified with reference to prior criminal charges against him. Upon cross-examination of other witnesses for defendant, they were interrogated as to other specific crimes allegedly committed by defendant. Defendant complained of such cross-examination, but this court held he was in no position to do so, having gone into the matter on direct examination. Obviously, neither of these cases sustains defendant's contention.

■ In State v. Todd, 342 Mo. 601, 116 S.W.2d 113, wherein defendant pleaded temporary insanity, we held that evidence that defendant was drunk when he shot and killed his son was properly admitted as an aid to the jury in determining the motive of defendant in firing the fatal shot. In so

holding, we cited with approval a Georgia case, wherein it was said that evidence of intoxication was admissible for the purpose of showing a condition of mind which might have made the defendant reckless of the consequences of his acts. In State v. Johnson, 349 Mo. 910, 163 S.W.2d 780, wherein defendant pleaded self-defense, as did defendant in the instant case, we held that evidence tending to show that defendant was intoxicated on the evening of the homicide there charged was material and competent on the question of determining whether defendant or the deceased was the aggressor. So, too, have we held in the recent, and as yet unpublished, case of State v. Henderson, Mo.Sup., 301 S.W.2d 813. These cases make it clear that the court did not err in permitting cross-examination of defendant in the instant case as to the amount of intoxicating liquor consumed by him throughout the day of the assault.

This brings us to defendant's final contention that it was prejudicially erroneous to permit the State to show the "difficulties, assaults and crimes between the defendant and other witnesses, Ferd Cooper, Nello Donatti and Ray Bartee". Defendant says these constituted "separate and isolated" matters distinct from the crime for which defendant was being tried.

■ It is true, as a general rule, that evidence of crimes independent of that for which the defendant is on trial is not admissible. But that rule is not applicable if the independent crime tends directly to prove the guilt of the defendant of the crime with which he is charged. State v. Flores, 332 Mo. 74, 55 S.W.2d 953, 955; State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 946; State v. Lorts, Mo., 269 S.W.2d 88, 91; Wharton's Criminal Evidence, Vol. I, 12th Ed., §§ 233–234, pp. 498 et seq. "[I]f the proof of another offense logically proves knowledge, intent or design in the commission of the offense charged and

for which the defendant is on trial such evidence may be admissible. Or it may show motive, the identity of the defendant as the perpetrator of the crime charged or it may be an act inseparable from the act charged, in which event evidence tending to show the defendant guilty of another crime is admissible. Or, if the evidence tends to establish the charge for which the defendant is on trial it is admissible though it prove him guilty of another offense." State v. Hepperman, 349 Mo. 681, 162 S.W. 2d 878, 884–885.

■ The evidence does not sustain defendant's contention that his drinking of intoxicants and his assaults upon Cooper and Nello Donatti were "separate and isolated" matters, distinct from the crime with which he was tried and convicted, as did the evidence in the cases cited in support of that contention. Rather do the herein related episodes tend to show that from the time defendant entered the J-Bar he was pugnacious and bent on mischief. He admitted an apparently criminal assault upon Cooper, which caused Nello Donatti to evict him; he assaulted and cursed Nello Donatti when Nello ushered him from the tavern; he left the bar resentful toward Nello and Joe Donatti because, as he said, *they* evicted him from the tavern. We think it clear that such acts and conduct of defendant, coupled with proof that almost immediately thereafter he brutally beat and kicked Joe Donatti into unconsciousness and broke the bones of his face, skull and hip, strongly tend to show a continuing and inseparable factual background definitely relevant to determination of the one essential issue in the case, to wit: whether defendant's assault upon Joe Donatti was felonious or a lawful defense of defendant's person. The trial court did not err in admitting the evidence of which defendant complains.

The judgment is affirmed.

All concur.