**STATE of Missouri, Respondent,**

v.

**Jack Virgil CAFFEY, Appellant.**

**No. 51596.**

Supreme Court of Missouri,

Division No. 1.

June 13, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied July 11, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Norman A. Selner, Special Asst. Atty. Gen., Clayton, for respondent.

Hildebrandt & Smith, Springfield, for appellant.

HENLEY, Judge.

Defendant was charged by information with burglary in the second degree and stealing, and a prior conviction under the Habitual Criminal Act. Sections 560.070, 560.156 and 556.280, RSMo 1959, V.A.M.S. Out of the hearing of the jury, evidence was submitted supporting a finding that defendant had been convicted of a prior felony, sentenced and imprisoned therefor. A jury found him guilty of the offenses of second-degree burglary and stealing. After his motion for new trial was overruled, the court determined and assessed his punishment at imprisonment for a term of four years on his conviction of burglary and imprisonment for a term of two years on his conviction of stealing, the sentences to run consecutively. He appeals from the ensuing sentences and judgment.

■ He assigns as error action of the court in overruling his motion for judgment of acquittal at the close of the state's case for the reason that the evidence (which he contends was wholly circumstantial) was insufficient to sustain a judgment of conviction. Defendant offered no evidence in his own behalf. The evidence at the trial developed the following facts.

In the early morning hours of January 9, 1965, at about 12:30 a. m., the defendant was found crouched or hunkered down behind a desk in the cashier's office of the Teamsters Union Hall, Local 245, in Springfield, Missouri, by Carl Page and Bob Kirk, assistant business representative and organizer, respectively, of the Union. Page and Kirk had been to Camdenton that day and on their return to Springfield shortly after midnight they went to the Teamsters building to get Mr. Page's automobile keys from his office. Using his key to unlock the south or rear door, Mr. Page, with Mr. Kirk close behind him, entered the darkened building and turned on a light. En route down the hallway to Page's office they heard a noise from the cashier's office. Suspicious of the noise, Kirk remained at the locked door of the cashier's office while Page went to the hall door of an adjoining and connecting office. He unlocked this door and then gave the keys to Kirk who unlocked the cashier's

office door. Entering the two rooms and turning on lights almost simultaneously they discovered the defendant in the position above described. Defendant is not a member of the local Union and had no authority to be in the building. One of them ordered the defendant to stand up with his hands above his head. While Page was using the telephone to call one of the officers of the Union, defendant attempted to escape. A scuffle ensued and he was subdued in the hallway by Page and Kirk. The police arrived within a few minutes and defendant was placed under arrest. He was searched and approximately $20 in currency and change, a pocket knife, a pair of gloves, and two hard-steel instruments later identified as capable of being used effectively as lock-picks were found on his person. A flashlight was found on a desk in the cashier's office. In the cashier's office a file cabinet drawer in which the petty cash box was kept was found standing open.

The secretary in charge of the petty cash fund testified that she inventoried the petty cash box, placed it in the file drawer, locked the drawer and put the key in her desk before she left the office shortly after 5:00 p. m., Friday, January 8, 1965; that she returned to the office Monday morning, January 11, inventoried the petty cash box and found it short $19.60.

After defendant was placed under arrest, all outside windows and doors were checked and all found closed and locked, except double doors on the front or north side of the building which were found closed but unlocked. These doors could be locked or unlocked from the outside or inside only by the use of a key. No mars or scars were found on these doors to indicate that they had been forced open.

The last person to leave the building on January 8, was William W. Kitts, who was holding a meeting of about 15 or 20 members of Joplin Local 823 in the auditorium of the building. Mr. Kitts testified that he saw Raymond Barton, janitor of the building, close and check all windows and doors of the building, including the inside doors, before Mr. Barton left shortly after 7:00 p. m. on the 8th; that the only door left unlocked by Barton was the rear or south door; that after those attending his meeting had left, at about 9:30 or 10:00 p. m., he turned out the lights and left through the south door, locking it with his key; that his key would not fit the north double doors, and that neither these nor any other doors were unlocked that evening after the janitor left.

The janitor testified that he left the Teamsters Hall shortly after 7:00 p. m., on January 8th, leaving Mr. Kitts and members of the Joplin Local in a meeting; that he showed Mr. Kitts some recent remodeling of the offices and as they went about the building, he checked all outside windows and doors, and inside office doors, to see that all were secure and locked; that when he left, all windows and doors, including the north side double doors and the door to the cashier's office (except the rear or south door), were locked, and all file drawers in the cashier's office were closed.

Detective Paul Jones of the Springfield Police Department testified that on Wednesday afternoon before the trial he took the two hard-steel instruments (found on defendant's person when arrested; identified, offered and received in evidence as state's exhibits A and B) out to Teamsters Hall and, along with others, watched a man from a local key service company take these instruments and with them unlock and then lock the north double doors of the Hall within a period of two minutes, all from outside the building.

Leo Deulen, President of the local Teamsters Union, testified that he was present on Wednesday afternoon before trial day and, along with others, watched a man from a local key service company use these two instruments to unlock and lock the double doors on the north side of the Teamsters building.

"Where the evidence of a defendant's participation in the offense charged is circumstantial, as it is in this case, 'the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.' [citing cases] In ruling the sufficiency of the evidence to support a verdict of guilty, however, even where the evidence is wholly circumstantial, all of the evidence tending to support the verdict must be considered as true, and every legitimate inference therefrom favorable to the verdict must be indulged." State v. Burton, Mo., 357 S. W.2d 927, 929–930 [1, 2], and cases there cited. Also see: State v. Smith, Mo., 357 S.W.2d 120, 123 [7].

The uncontradicted evidence is that when the last person left the Teamsters Union Hall at about 9:30 or 10:00 p. m., on January 8, all inside lights were out and all outside windows and doors, as well as all inside doors and file cabinet drawers in the cashier's office, were closed and locked; that shortly after midnight defendant, not a Union member and with no authority to enter the building, was found crouched or squatted behind a desk in the darkened and locked cashier's office in close proximity to the opened file cabinet drawer containing a box in which the petty cash fund was kept and from which $19.60 was missing; that defendant attempted to escape his accosters; that when searched approximately $20, an amount similar to that missing, was found on his person together with two hard-steel instruments capable of being used to pick the lock on the north double doors; that the windows and outside doors were checked within a few minutes after defendant's arrest and all were found to be closed and locked, except the north double doors which were closed but unlocked. From these facts and circumstances it reasonably may be inferred that defendant, with the described instruments, picked the lock on these doors, entered the building through this doorway, and took the money missing from the petty cash box.

We hold that this constituted sufficient evidence to support a finding that defendant broke and entered the building with the intent to steal and did steal. State v. Brewer, Mo., 325 S.W.2d 16, 20 [9–12]; State v. Fritz, Mo., 379 S.W.2d 589, 590–592 [2–7]; State v. Young, 345 Mo. 407, 133 S.W.2d 404, 407–408 [10–11]; State v. Burton, Mo., 357 S.W.2d 927, 930–931 [3–4]; State v. Luther, Mo., 338 S.W.2d 846, 848 [6]; State v. Hannon, Mo., 204 S.W.2d 915, 916–917 [1, 2].

■ Defendant's next assignment is that the court erred in not submitting the issue of punishment to the jury for the reason that the information fails to charge properly a prior conviction in that it does not allege "a valid sentence, imprisonment thereunder, compliance with said sentence and discharge thereunder."

The first paragraph of the information alleges that on September 16, 1955, prior to the date of the offenses of burglary and stealing charged in the information, defendant was convicted in the Circuit Court of Greene County, Missouri, of felonious assault, an offense punishable by imprisonment in the penitentiary, sentenced to imprisonment for three and one-half years and thereafter imprisoned therefor. The information meets the requirements of § 556.280 and is sufficient. It was not necessary that the information allege full compliance with the sentence and his discharge therefrom. State v. Donnell, Mo., 387 S.W.2d 508, 514 [12].

■ As a sub-point in his attack on the applicability of the Habitual Criminal Act defendant contends that the court's finding of a prior conviction is insufficient in that it is a general finding and not a specific finding of each fact required by § 556.280. After hearing evidence, which defendant admits in his brief was sufficient

to prove the applicability of the Act, the court made this order: "The court finds that under the evidence that [sic] the defendant is a habitual criminal as that term is defined by law." Before enactment of the present Habitual Criminal Act[1] an analogous situation arose in State v. Kelly, Mo., 258 S.W.2d 611, 612 [7], wherein evidence of the prior conviction was heard and determined by the jury. In Kelly the jury returned a verdict finding "the defendant guilty of Larceny from a building, Second Offense, as charged in the information, * * *." The court said "The verdict should have contained a specific finding by the jury that defendant had been convicted of a prior felony as charged, rather than a finding of 'Second Offense.' * * * However, by reference to the information, the evidence of a prior felony conviction, and the instructions of the court, the meaning of the verdict is clear. Under these circumstances, it was sufficient in form and substance to sustain the judgment."

While the order in this case certainly is not a model to be followed, its meaning is clear. We hold that it is a sufficient finding on which to base assessment of punishment by the trial judge after conviction. The better practice would have been for the order to recite specific findings of defendant's (1) prior conviction, (2) sentence, and (3) subsequent imprisonment.

■ On the morning of trial day, May 7, 1965, outside the presence of the jury, counsel for defendant made an oral motion to quash the jury panel on the grounds that it was his "understanding" that the jury panel was present in the courtroom on May 5, when defendant was brought into the courtroom in handcuffs for a hearing on a motion to suppress evidence; and, that it was also his "understanding" defendant had been brought handcuffed from the jail to the courtroom for trial and en route was in the presence of the jury in the hallway.

He assigns as error action of the court in overruling his motion to quash, stating that there was no showing by the state of any necessity for his being handcuffed. He argues that his exposure to the jury while so shackled was prejudicial to his rights and denied him a fair trial and due process of law.

No evidence was offered by defendant to support these allegations of his motion. We are faced with the bare motion which does not prove itself. This assignment of error is without merit. State v. Boone, 355 Mo. 550, 196 S.W.2d 794, 797 [4].

■ The next point briefed by defendant is that the court erred in permitting Detective Paul Jones to testify that he saw an employee of a key service company unlock and lock the north double doors of the Teamsters building by use of the two hard-steel instruments taken from defendant's person on the night of his arrest; that this key service company employee was, in effect, a witness against him and that by the detective's testimony he (defendant) was denied confrontation and cross-examination of that witness in violation of his rights guaranteed by § 18(a), Article I, Constitution of Missouri, V.A.M.S., and the Sixth Amendment to the Constitution of the United States.

The objections made by defendant during the direct examination of Detective Jones were not that he was being denied confrontation of a witness against him, but were to Jones describing an experiment he saw someone else perform. It was not until after cross-examination of Jones by defendant and after the witness had been excused from the stand that defendant made the objection that he was denied confrontation of a witness against him. This objection was not raised at the earliest opportunity and was thereby waived. State v. Garrett, Mo., 391 S.W.2d 235, 243–244 [5].

1. Laws 1959, Senate Bill 117, § 1; now § 556.280, RSMo 1959, V.A.M.S.

■ Moreover, there are other reasons why defendant has waived any objection to this testimony of Detective Jones. During his cross-examination of Jones, defendant developed the fact that it took the employee of the key service company only two minutes to unlock the double doors with the lock-picks. And defendant made no objection whatever to the testimony of Leo Deulen, President of the Local, who said that he too was present and observed this employee of the key service company unlock and lock these doors with these instruments.

Actually, all that Detective Jones testified to was what he observed with his own senses. That is, he said he saw this employee of the key service company insert these two hard-steel instruments in the lock on the double doors, move these instruments around, and thereby unlock and then lock the doors. Testimony as to what the detective observed with his own senses did not deprive defendant of his constitutional right of confrontation. City of Webster Groves v. Quick, Mo.App., 323 S.W.2d 386, 390 [5], transferred from Supreme Court, 319 S.W.2d 543.

■ Defendant's next assignment is that the court erred in failing to instruct on the offense of stealing less than $50, and in failing to submit to the jury forms of verdicts for this separate offense. The record does not support his contention that verdict forms on stealing less than $50 were not submitted to the jury. The evidence was that the amount missing from the petty cash box was less than $50. Stealing less than $50 in conjunction with a burglary is a felony, and stealing less than $50 not in conjunction with a burglary, is a misdemeanor. Sections 560.110 and 560.161 RSMo 1959, V.A.M.S. Had defendant not been charged with burglary or, if being so charged the jury had found him not guilty of burglary, the jury could have found him guilty of stealing less than $50. " * * * But here the jury found the defendant guilty of the separate and distinct offense of burglary, and therefore any stealing done in conjunction therewith could not have been a misdemeanor. While it was error not to instruct on the offense of stealing less than $50, under the circumstances here where the jury found defendant guilty of the burglary, it was not and could not have been prejudicial to the defendant that the jury was not instructed on stealing less than $50." State v. Crow, Mo., 388 S.W.2d 817, 820–821 [7, 8]; State v. Davy, Mo., 395 S.W.2d 211, 213 [1], and cases there cited.

■ Defendant's next point is that the court erred in giving instruction No. 4. No attack is made on this instruction in defendant's motion for new trial and the point is not preserved for review. Rule 27.20, V.A.M.R.; State v. Brookshire, Mo., 353 S.W.2d 681. Moreover there would be no merit in the point had it been preserved for review. A like instruction was approved in State v. Breeden, Mo., 180 S.W.2d 684, 687 [6].

■ Defendant next contends that the court erred in failing to declare a mistrial, because the state's attorneys expressed their personal opinions of defendant's guilt in their closing argument. A portion of the argument of one of counsel for the state was as follows: " * * * The question is, How did Mr. Caffey get into the Teamsters Hall that night? Well, we found two chunks of metal, here, on Mr. Caffey. They were in his pocket. Lieutenant Hoagland testified to that. Here they are. And Mr. Jones, Detective Jones, testified that he, last Wednesday, witnessed these locks being opened by the use of these very two items that were found on Mr. Caffey, by manipulating the locking mechanisms, the tumblers, the door was unlocked. He observed that. I don't think there is any question in my mind about how Mr. Caffey got there—."

Defendant objected to counsel "expressing his personal opinion on this case", and moved for a mistrial. The court's ruling was: "The objection will be sustained as

to what the prosecutor thinks about it. The jury will understand that it is what the jury thinks about it is what counts. The prosecutor is entitled to draw such legitimate inferences from the facts as he can. The request for mistrial will be denied. The jury will be instructed to disregard what the prosecutor thinks * * *."

Later, the second of counsel for the state argued, in part: "* * * Now if this man were a member of this organization, or something like that, what would he be in there for? What would he be in there for? In the dark, in the middle of the night, with all the doors locked except one door, the outer door, where he supposedly went in? I think it is a fair inference that he went in that door. Now if he was supposed to be in there, wouldn't he turn on the light to see what he was doing? Would he hide behind a desk? Would the cabinet be open where the money was supposed to be? Would the change be in his pocket? Would all these things occur? Is it not a fair inference that this man is guilty of Burglary and Larceny and that he should be found guilty? I think it is fair, I think it is one of the fairest cases I ever saw."

Defendant again objected to counsel "expressing his own personal opinion on the case" and moved for a mistrial. The court sustained the objection but overruled his motion for mistrial.

■ Although counsel for the state may not express their private opinions of the guilt of defendant, they may state their conclusions based on the evidence. State v. Warren, Mo., 320 S.W.2d 575, 578; State v. Vinson, Mo., 107 S.W.2d 16, 18 [4]; State v. Gridley, Mo., 353 S.W.2d 705, 707–708 [10–12]; State v. Johnson, 349 Mo. 910, 163 S.W.2d 780, 784 [14–15]. It is apparent that in both instances the objected-to remarks of counsel for the state, taken in context, were statements of their conclusions based on the evidence. We hold that these arguments did not amount to improper expressions of personal opinions as to the guilt of defendant.

■ Also during closing argument, one of counsel for the state remarked, "* * * I would like to go over some of the testimony. We call this a closing argument, but really we are not arguing about much, because everything I am arguing about and talking about is uncontradicted. Everything that was put on here was put on by the State. That evidence has been uncontradicted * * *." Defendant's objection to this portion of the argument, overruled by the court, was: "* * * I believe it is a comment upon the fact the defense has presented no evidence in this case * * *." His assignment of error and the point briefed is that this remark constituted a comment on the failure of defendant to testify, a comment prohibited by § 546.270, RSMo 1959, V.A.M.S.

Assuming for the purpose of this opinion that this objection is sufficient to preserve for review the specific point now relied on, we experience no difficulty in holding that the argument was not a comment on defendant's failure to testify. This court has held many times, and we again hold, that argument that evidence on behalf of the state is uncontradicted or undisputed does not constitute error. State v. Perkins, Mo., 382 S.W.2d 701, 706 [8], and cases there cited; State v. Hayzlett, Mo., 265 S.W.2d 321, 323–324 [3–4].

Examination of the record required by our Rule 28.02, V.A.M.R. discloses no error.

The judgment is affirmed.

All concur.