**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Johnell WHITTINGTON,
Defendant–Appellant.**

No. 52285.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 19, 1988.

Rehearing Denied Aug. 31, 1988.

Raymond Howard Jr., St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Jared Richard Cone, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals his conviction by a jury of four counts of sodomy and his sentence by the Court as a persistent offender to four consecutive fifteen year sentences of imprisonment. We affirm.

The victim, a male, was a volunteer for the New Life Evangelistic Center engaged in the Center's Winter Patrol. That program involved the volunteers seeking out people on the streets or in buildings who needed shelter and taking them either to the Center or to their homes if they had one. The victim had given one man a ride to his home on December 1, 1985, when he saw defendant on the street shivering. The temperature on that night was approximately 10° F. with a wind chill factor of − 8° F. The victim asked defendant if he

was "in need". Defendant accepted the offer of a ride but said he was not homeless and only needed a ride to his home.

Defendant gave general directions to his residence and in following these directions the two drove around for approximately thirty minutes. Defendant asked the victim to stop at a Nazarene Church which was across the street from the Wellston Police Station. Defendant began threatening the victim, advising him that defendant "had a .38" and liked "to kill people", and that if the victim attempted to run to the police station defendant would shoot him. No weapon was displayed. Defendant then ordered the victim to suck his penis. The victim testified he did so three times out of fear.

The victim then encouraged defendant to accompany him to a White Castle restaurant for some food. He did this because he hoped to escape there but the defendant stayed close to him while at the restaurant and victim feared he would be shot if he asked for help or tried to escape.

After leaving the White Castle, victim and defendant returned to a street in Hillsdale approximately a mile and a half from the Wellston Police Station. They parked three houses down from the home of defendant's sister where he also stayed. Upon defendant's order the victim removed his shoes, trousers and underpants and was then subjected to a series of rectal and oral assaults by defendant's penis. Eventually defendant fell asleep and the victim escaped from the car, nude from the waist down except for ankle stockings. He went to the Wellston Police station where he arrived shortly after his escape still in the same state of undress. Police located the victim's automobile and found therein the defendant, just waking up, and the victim's shoes, trousers and underpants.

Physical examination of the victim revealed traces of semen on his facial hair near his mouth and near his rectum. His rectum showed evidence of trauma greater than would be expected from voluntary anal intercourse. Swabs from victim's mouth and anus were negative for semen as were tests made of his clothing and that of defendant. There was medical testimony that the absence of such semen did not establish that no intercourse had taken place.

Defendant presented evidence of alibi placing him with members of his family until just before his arrest.

■■■■ Defendant first attacks the sufficiency of the evidence to sustain the conviction particularly as it relates to the "forcible compulsion" requirement of Sec. 566.-060. Forcible compulsion includes a threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of himself. Sec. 556.-061(12). Resistance never comes into play where a threat is employed. *State v. Dee*, 752 S.W.2d 942 (Mo.App.E.D.1988). What is a reasonable fear under the circumstances is generally a question for the fact-finder. The evidence establishes at least an implied threat which the victim testified was the reason for his submitting to the assaults. He made his escape at the first clear and safe opportunity to do so. His traversing a mile and one-half in a semi-nude condition on a very cold night is indicative of a hasty and fearful escape and is not consistent with having engaged in voluntary acts. The physical examination also corroborated the non-voluntary nature of the activities. We find the evidence sufficient to support the conviction.

■■■■ Defendant next contends that the trial court improperly refused to send an exhibit to the jury after it had asked for all exhibits. The exhibit was the county police crime laboratory report showing the negative results of the various tests for semen. When an exhibit has been properly admitted into evidence it is still within the sound discretion of the trial court whether the exhibit will be sent to the jury during deliberations. *State v. Graham*, 641 S.W.2d 102 (Mo. banc 1982) [14]. The record here does not reflect that defendant made any objection to the court's action at the time. The material in the report had been completely covered by the testimony. Much, if not all, of the material in the report had little probative value on the issue before the jury. We find no abuse of discretion in

the court's action and no prejudice to defendant from such action.

 Defendant next challenges the selection of the venire which contained only one black. He further challenges the jury selected on the basis that the prosecutor used his peremptory challenge in a discriminatory manner to eliminate that venireperson. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) the court pointed out that to successfully challenge a venire panel the defendant must show underrepresentation *and* that the venire was selected under a practice providing the opportunity for discrimination. 106 S.Ct. 1722. Defendant made no showing of the second element. As to the peremptory strike the prosecutor gave two reasons for the strike. Both were legitimate, race-neutral reasons. We find no error.

 Defendant premises error upon the trial court permitting a police officer to testify that when he saw the victim at the police station he was not under the influence of drugs. The thrust of this argument is that such an opinion must be based upon facts and the testimony of the officer did not give a factual basis for his conclusion. Where a witness testifies to an abnormal condition he is required to give his factual reasons for believing an abnormal condition existed. *State v. Crawford*, 646 S.W.2d 841 (Mo.App.1982) [3]. The opposite is not true. It was not necessary for the officer to recite the reasons why the victim was not acting abnormally. *State v. Todd*, 342 Mo. 601, 116 S.W.2d 113 (Mo. 1938) [11, 12]. The officer had extensive experience in dealing with people under the influence of drugs and he gave his opinion that the victim was not under such influence after observing the victim for an extended period of time. There was no error in admitting the testimony.

 Finally, the defendant challenges testimony concerning a "blue light test" utilized at the hospital to identify semen around the victim's mouth and anus. The examiner shines a blue light on the suspect areas and if semen is present it becomes fluorescent and can be observed visually. One of the objections defendant now makes

was not advanced at trial and so is not preserved for review. The second is that there was no evidence the equipment was working properly. The doctor testified that if the equipment, similar to a flashlight, is working properly the light goes on when the switch is activated and if it does not go on it is not working properly. That is all there is to the operation of the equipment. The light here went on. We find no error.

Judgment affirmed.

KAROHL, P.J., and KELLY, J., concur.