## THE STATE v. NETTLES, Appellant.

Division Two, January 23, 1900.

1. **Newly Discovered Evidence:** AFFIDAVIT. A motion for a new trial on the ground of newly discovered evidence must be supported by the affidavits of the witnesses from whom defendant expects to obtain such evidence, or their absence accounted for.

2. **Witnesses:** INDORSING NAMES ON INDICTMENT. The State is entitled to introduce witnesses whose names are not indorsed on the indictment. But it should not be permitted to purposely refrain from indorsing the names of material witnesses thereon and thereafter introduce them at the trial.

State v. Nettles. ·

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

Affirmed.

*Chas. J. Maurer* and *Jno. L. Van Palton* for appellant.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The witnesses from whom the defendant intended to obtain this newly discovered evidence, did not make affidavit thereto, but the defendant alone makes the affidavit. As to what the new witnesses would testify to, this does not satisfy the statute. The affidavit of the witness himself must be produced or his absence accounted for. State v. McLaughlin, 27 Mo. 111; State v. Musick, 101 Mo. 260; State v. Larrimore, 20 Mo. 425; State v. Ray, 53 Mo. 345. And besides the affidavit of the defendant, in which he sets up newly discovered evidence, shows that the evidence to be obtained is merely cumulative. For that reason the motion should not have been sustained. State v. Campbell, 115 Mo. 391; State v. Cantlin, 118 Mo. 100; State v. Burd, 115 Mo. 405. (2) Objection is made that certain witnesses were introduced and permitted to testify whose names were not indorsed on the indictment. Section 4097, R. S. 1889 has been frequently construed and it has been universally held that the statute reserves the right in the State to call witnesses whose names are not indorsed on the indictment. State v. Steifel, 106 Mo. 129; State v. O'Day, 89 Mo. 559; State v. Griffin, 87 Mo. 608. (3) The defendant on account of the introduction of witnesses whose names were not indorsed on the indictment, can not plead unexpected testimony of the State as ground of surprise and this is true, even where witnesses are sworn to testify at the trial who were not examined by the

grand jury.    State v. Childs, 10 Tex. App. 183; State v.
McClary, 75 Ind. 260; State v. Evans, 13 Tex. App. 225;
State v. Phillips, 91 Mo. 478; State v. Loehr, 93 Mo. 103.

BURGESS, J.—The defendant was convicted in the cir-
cuit court of the city of St. Louis of murder in the first degree,
and his punishment fixed at death, for having shot and killed
with a pistol one Samuel W. Mann.    He appeals.

Defendant is a negro, and had lived in St. Louis about
two years at the time of the homicide.    The deceased lived
with his family at No. 4862 Old Manchester Road, and was
engaged as conductor on a suburban street car line in said
city.    About six o'clock in the evening of July 4, 1898, he
left Meramec Highlands, at which place his wife and two chil-
dren boarded a car for the city, of which he was in charge as
conductor.    He went into the city as far as Sixth and Locust
streets, which is the terminus of the line upon which he was
engaged, where he remained until the regular time for him to
go west.    Mrs. Mann, the deceased's wife, occupied the second
seat from the rear door on the left-hand side going west.    The
evidence is not clear as to when the defendant got on the car.
Some time before they reached 28th street he was observed
by Mrs. Mann, who testified that her attention was directed
to him by his working with a broken seat on the car; that he
was trying to make the back of the seat set up, but on account
of its being broken it would not set in its place.    The defend-
ant occupied the seat directly opposite and across the aisle from
Mrs. Mann.    The deceased told the defendant to let the seat
alone, that it was broken and that there were others unoccupied.
The defendant got up and went to another seat which he occu-
pied but a few minutes when he arose and drew a revolver
from his pocket and flourished it two or three times in the air.
There were, at the time, ten or twelve passengers aboard.    The
deceased told the defendant that he would either have to put
his revolver in his pocket and behave himself or else leave the

car. To this the defendant replied that he did not know whether he would or not. Deceased said he could not carry on in the car that way. Defendant then told deceased to give him back his fare. Deceased said the fare was "rung up" and he could not give it back, whereupon the defendant stepped towards the door in which the deceased stood and says, "Give me my fare." The deceased then gave him his fare and told him to get off, at the time stopping the car and motioning the motorman to come and assist him. The car was stopped and the motorman came back and assisted the conductor in putting the defendant off. They took hold of him and led him out of the car, off of the platform and on to the street. The car was stopped at the corner of 28th street and Franklin avenue. As soon as they had put the defendant off the car, he raised his revolver and fired. The deceased and the motorman started after him. They went but a few steps and stopped. As they turned to go back to the car the defendant again raised his revolver and fired twice. On reaching the steps at the rear end of the car deceased remarked to the motorman that he had been shot twice. One of the balls had taken effect just below the heart and lungs, severing two or three arteries. The other ball took effect in his right wrist. The deceased was taken from the street car to the Baptist Sanitarium, a short distance away, where he was kept until the following morning, when he died.

The defendant ran down the alley towards Linden street, where he boarded at 1326.

The evidence as to the identity of the defendant is clear and convincing. A number of witnesses who were on the car at the time, testified as to his committing the act.

The only defense set up is that of an alibi. Defendant claims to have left his boarding house in the middle of the afternoon of July 4th and gone with his landlord, Mitchell White, to Kirkwood where they attended a picnic, returning about 7 o'clock in the evening. From that time on until

midnight, he remained either at his boarding house or his next door neighbor's. A number of witnesses were introduced who testified that the defendant was at or near his boarding house continuously from 7 o'clock in the evening until midnight, where he and his landlord, White, were arrested by a police officer.

The court instructed the jury upon murder in the first and second degrees and manslaughter in the fourth degree.

In the motion for a new trial many errors are assigned, which are without merit—and only such as seem to be worthy of consideration will be further noticed, and the first of these is that the verdict of the jury is against the evidence. The only defense was that of an alibi, and upon this question the evidence was somewhat conflicting, but showed conclusively, we think, that defendant was present at the time of the homicide, and did the shooting which caused the death of the deceased. The verdict was well warranted by the evidence, and under such circumstances it will not be disturbed.

Nor does it appear that incompetent or irrelevant testimony was admitted on the part of the State, or that the court excluded competent and relevant testimony offered by defendant.

Another ground upon which a new trial was asked was that of newly discovered evidence, but this ground was not supported by the affidavits of the witnesses from whom defendant expected to obtain such evidence, and it has been uniformly held by this court, that the affidavit of the witness himself should be produced or his absence accounted for. [State v. McLaughlin, 27 Mo. 111; State v. Ray, 53 Mo. 345; State v. Musick, 101 Mo. 260; State v. Welsor, 117 Mo. 570.] Besides the affidavit of defendant in which is disclosed the newly discovered evidence shows that it is merely cumulative, and for this reason also, it furnished no ground for a new trial. [State v. Campbell, 115 Mo. 391; State v. Cantlin, 118 Mo. 100.]

State v. Nettles.

Another ground for new trial is that certain witnesses were introduced and permitted to testify whose names were not indorsed on the indictment.    This ground is based on section 4097, Revised Statutes 1889, which reads as follows:    "When an indictment is found by the grand jury, the names of all the material witnesses must be indorsed upon the indictment; other witnesses may be subpoenaed or sworn by the State, but no continuance shall be granted to the State on account of the absence of any witness whose name is not thus indorsed on the indictment, unless upon affidavit of the prosecuting attorney showing good cause for such continuance."

While the purpose of this statute is that the accused may know who his accusers are—and prepare to counteract their testimony, or to impeach or contradict them if deemed necessary, it was not intended to deprive the State of the right to introduce witnesses other than those whose names are indorsed on the indictment, for it expressly provides that "other witnesses may be subpoenaed or sworn by the State," but at no time should the State be allowed to purposely refrain from indorsing the names of material witnesses on the back of the indictment, and then introduce them at the trial and in this way take an undue advantage of the defendant.

In State v. O'Day, 89 Mo. 559, it was expressly held, that when the names of several witnesses are indorsed on an indictment, the State will not be denied the right to introduce other witnesses, whose names are not thus indorsed, and, that the presumption must be indulged that the indictment was found upon the evidence of the witnesses whose names are indorsed on the indictment, and that the grand jury, in making the indorsement, fully complied with the requirements of the statute.

In State v. Steifel, 106 Mo. 129, one Clevlen whose name was not indorsed on the indictment, was introduced as a witness on the part of the State over the objection of defendant, and GANTT, P. J., in speaking for the court said:    "The fact that

Clevlen's name was not indorsed on the indictment did not render him incompetent. The statute requiring the names of all matterial witnesses to be indorsed on the indictment is a most just and humane provision. It is right that when a citizen's liberty or life is endangered that he should know the names of the witnesses by whom the charge is to be made good. By so knowing he can prepare his defense. It may be necessary for him to impeach some of these witnesses. The State ought not to ask a conviction, unless it can be obtained fairly and upon testimony that will stand the severest tests known to the law. [State v. Roy, 83 Mo. 268; State v. Grady, 84 Mo. 220.] But, while this is true, itt can not be said, that, if the State discovers evidence that the grand jury could not obtain, that the State shall not avail itself of this evidence if discovered before it closes its case. Indeed section 4097 expressly reserves to the State the right to call witnesses other than those whose names are indorsed on the indictment. [State v. O'Day, 89 Mo. 559.]"

The instructions are very elaborate, cover every phase of the case, and are free from objection.

The indictment is all that could be desired.

Finding no reversible error in the record, we affirm the judgment, and direct that the sentence be executted.

*Gantt, P. J.,* and *Sherwood, J.,* concur.