**STATE of Missouri, Respondent,**

v.

**Leroy MAXWELL, Appellant.**

**No. 49606.**

Supreme Court of Missouri,

Division No. 2.

March 9, 1964.

Jack L. Koehr, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, George D. Chopin, Special Asst. Atty. Gen., St. Louis, for respondent.

PRITCHARD, Commissioner.

In this case, which comes to the writer upon reassignment, defendant was charged by indictment and was found guilty by the verdict of a jury for the crime of robbery in the first degree by means of a dangerous and deadly weapon. §§ 560.120, 560.135, RSMo 1959, V.A.M.S. It was also set forth in the indictment that defendant had four prior felony convictions and upon a finding thereof in a hearing conducted outside the hearing of the jury, the court at the close of the trial fixed defendant's punishment at forty years' imprisonment. Thereafter, defendant filed his motion for new trial which was overruled. Allocution was then had and defendant was sentenced in accordance with his previously fixed punishment.

Defendant (who was represented by the Public Defender at the trial) has filed no brief in this court and we therefore review all of his properly preserved assignments of error in his motion for new trial. Supreme Court Rule 28.02, V.A.M.R.; State v. Weindorf, Mo., 361 S.W.2d 806, 808 [1].

On November 30, 1961, Hortense Grant was working alone as a clerk in the "Velvet Freeze" ice cream store at Union and Greer streets (3027 Union) in the City of

St. Louis. At about 9:30 o'clock that evening one Willie Banks (who was jointly indicted with defendant, Boyd Griffin Gray and Kenneth Butler upon the same charge of first degree robbery) came into the store, bought a nickel bar of candy and walked out the door. Later on defendant (whom Hortense identified at the trial and also in the police line-up on a Monday after the Thursday she was held up) came into the store and up to the counter and said, "This is a stick-up." He took a shotgun out from under his coat, and hit it down on the counter. About that time Banks (who had bought the candy two or three minutes before) and Butler came in. There were then no customers in the store. Banks and Butler came over behind the counter to get the money and then defendant said, "Don't take the money out of the drawer; let her take it out." Hortense then took the money out of the cash register, put it in Banks' bag and gave it to Banks and Butler, who each had revolvers. Hortense testified that State's Exhibit 1 (shotgun) was similar to the gun held by defendant and State's Exhibits 2 and 3 (revolvers) were similar to the ones handled by Butler and Banks on the night of the robbery.

The men then went in the back of the store, ransacked Hortense's purse and then went out the door. She did not see them again that night, but she did the following Monday at the Central Police Station line-up where she testified, "I saw Banks, Butler and Maxwell, and I can't ever think of the other boy." She was sure that the man she saw there in the line-up was the defendant. The following morning Hortense went again to the police station where the defendant told her that he had participated in the robbery; that he had the shotgun in his possession on that day; that he was then with Butler and Banks; and that he (defendant) got around eight or ten dollars in change from her cash register. In the line-up, the only one Hortense did not identify was the person driving the car, whom she did not see on the night of the robbery.

Devolia Cooksey is the manager of the Velvet Freeze store at 3027 Union Street. She testified that she is the only person who had a key to the cash register within the store; that she kept a record of the amounts of money taken in and on December 1, 1961, she made a determination from the cash register receipts that $39.48 belonging to Velvet Freeze had been in it.

George Fritsche of the St. Louis Metropolitan Police Department, with other officers, arrested defendant on December 3, 1961, at 1017 North 22nd Street, and brought him to the Central District where he was placed in holdover.

James Reddick, Supervisor of the Robbery Division of the Police Department, assisted in the investigation of the robbery, during the course of which he talked to defendant and accompanied him to his home on North 22nd Street, where he got two weapons, State's Exhibits 2 and 3, from defendant's mother. State's Exhibit 1, the shotgun, was obtained by Reddick in an apartment at 2209 Division Street.

Kirby Conover of the Police Department assisted Reddick in the robbery investigation. Defendant stated in his presence that on November 30 he was in the company of Gray, Butler and Banks, and they all went to the Velvet Freeze ice cream store at 3027 Union. When they arrived there, Gray was driving and remained in the car. Butler, Banks and defendant, who had a shotgun with him, entered the store where defendant laid the shotgun across the counter pointed at the woman and told her it was a stickup. Butler started to go behind the counter and defendant told him not to do that, but to let the lady get the money. She got the money from the cash register, and the men left the store. Thereafter, the men divided the loot equally—four ways. At the Police Headquarters on December 4, defendant identified the shotgun, State's Exhibit 1, and said it was the one he had used in the robbery of the Velvet Freeze ice cream store. Defendant's admission of these facts and his identification

of the shotgun used by him were substantiated by the testimony of police officers O'Connell and Spiess.

■ Assignment No. 1, attacking the submissibility of the state's case, is overruled. The evidence above set forth clearly establishes all of the elements of first degree robbery with a dangerous and deadly weapon. Under § 560.120, RSMo 1959, V.A.M.S., these elements (as applicable here) include taking the property of another from the person and against the will of his servant, clerk or agent, by putting him or her in fear of some immediate injury to his or her person. Here defendant was positively identified by Hortense Grant as the person who exhibited the shotgun which was admitted by defendant to have been used by him in perpetrating the robbery of the Velvet Freeze store, of which Hortense was an employee or a clerk or agent. She was commanded by defendant to hand over to his accomplices the money in the cash register. It could be clearly inferred that Hortense was in fear of some immediate injury when she was confronted by these men and in the face of a shotgun. Nothing more need be said. See State v. Churchill, Mo., 299 S.W.2d 475, 478 [2–9]; State v. Foster, Mo., 349 S.W.2d 922, 923 [3].

■ Assignment No. 2 deals with the propriety of the trial court's action in giving paragraph 4 of Instruction No. 2, which is:

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence."

Defendant claims that the inclusion of the words "but a doubt to authorize an acquittal on that ground ought to be a substantial doubt" is error in that the word "substantial" denotes to the jury, and has been perverted by common usage, to mean a large amount or a great deal. We take this to mean that the claim is that a "substantial" doubt would require more evidence to support than a "reasonable" doubt. The claim is without merit. The precise question was ruled in State v. Cheatham, Mo., 340 S.W.2d 16, 20 [10], where the court said, "It has often been recommended that reasonable doubt instructions follow the exact language of the statutes (53 Am.Jur., Sec. 750, p. 560) but the mere description 'substantial' doubt has been frequently employed if not coupled with other language such as a 'well-founded doubt.' (Citing authority) But as to the specific objections urged here it has been held that the language does not render the instruction contradictory or argumentative and does not 'whittle away' or minimize the defendant's rights and the presumption of innocence." See also State v. Velanti, Mo., 331 S.W.2d 542, 545 [4]. Assignment No. 2 is overruled.

■ Assignment No. 3 that "The verdict of the jury was against the weight of the evidence" is too general to preserve anything for review. Supreme Court Rule 27.20, V.A.M.R. It is therefore overruled.

■ By assignment No. 4 defendant claims that the verdict of the jury was against the weight of the evidence in that Hortense Grant testified that all four defendants were in the police line-up when she made a positive identification, whereas all the police officers who participated in arranging the line-up testified that at no time were all four defendants in the same group. Such claim is completely without merit. Any discrepancy in Hortense's testimony (when compared to that of the officers) as to her observations would go merely to the weight and credibility of her testimony which was for the jury to determine. Assignment No. 4 is overruled.

■ The sentence of the court was for forty years' imprisonment of defendant.

In assignment No. 5, defendant's claim is that this is "such to constitute cruel and unusual punishment which is against the Constitutions of the United States and the State of Missouri." The assignment is too general to comply with said Supreme Court Rule 27.20. Nevertheless, this sentence for the crime of robbery with a dangerous and deadly weapon is well within the permissible limits of § 560.135, RSMo 1959, V.A.M.S., of not less than five years up to life imprisonment inasmuch as the death penalty was not requested in this case. Assignment No. 5 is overruled.

■ Defendant (by admissions) identified the shotgun, State's Exhibit 1, and stated it was the one used by him in the robbery. The two revolvers (State's Exhibits 2 and 3) were taken from the home of defendant's mother by the investigating officers at a time when defendant was with them. Hortense Grant testified the shotgun and the revolvers looked like the ones used by defendant and his accomplices. See State v. Johnson, Mo., 286 S.W.2d 787, 791 [3, 4], a similar case, in which it was held that identification need not always be wholly unqualified in order to make the evidence admissible. Defendant's assignment No. 6, raising the point of the admissibility into evidence of these three weapons, is overruled.

■ Defendant orally requested the trial court to give an instruction concerning his failure to testify. By assignment No. 7 he contends the court erred in refusing to so instruct the jury. Defendant offered no instruction covering the subject, and for this reason and for the further reason that it is not error to refuse such an instruction, the trial court did not err. See State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 455; State v. Rutledge, Mo., 267 S.W.2d 625, 626; § 546.270, RSMo 1959, V.A.M.S.

■ By assignment No. 8, defendant contends error was committed by the trial court permitting counsel for the state to remark in his closing argument, " 'Did the defense offer any testimony that he was somewhere else at the time of this occurrence.' " The ground of the contention is that this is a comment upon defendant's failure to testify and is violative of the provisions of said Section 546.270 and defendant's constitutional right not to be required to testify against himself in that the statement is an indirect reference thereto. We do not deem the remark to be a reference to the fact that the *accused* did not testify. See State v. Hayzlett, Mo., 265 S.W.2d 321, 322 [2]; State v. Cox, Mo., 352 S.W.2d 665, 670 [7, 8]. Assignment No. 8 is overruled.

■ In his last assignment of error (No. 9), defendant complains of the argument of counsel for the state in the statement referring to defendant as " 'the ringleader of the gang. There is a man experienced, taking advantage of youthful foolishness' ". This assignment is overruled for the reason that there was evidence that the other three accomplices were younger than defendant; and that defendant at the time of the perpetration of the robbery gave directions to the others. These matters would establish a legitimate inference that defendant was the ringleader, and therefore counsel for the state could properly comment thereon. State v. Feger, Mo., 340 S.W.2d 716, 728. Assignment No. 9 is overruled.

■ We note from reading the record that after the verdict was rendered upon the submitted issue of the guilt or innocence of the defendant, the trial court preliminarily fixed the punishment *in the presence* of the jury and also explained to it this procedure. Such practice is to be discouraged. The purpose of the Habitual Criminal Act, Section 556.280, RSMo 1959, V.A.M.S., is to keep the matter of previous convictions of felony offenses from the jury, leaving the matter of the sentence to be imposed within the permissible limits for the particular offense to the trial judge. State v. Morton, Mo., 338 S.W.2d 858. The procedure in the instant case is fraught

with possibility that in other subsequently tried habitual criminal cases some of the same members of the jury, knowing this procedure, will take into account that the accused has a criminal record in arriving at a verdict of guilt or innocence. The proper procedure is to take up the matter of the punishment to be imposed after the jury's verdict is received and outside of its hearing. The matter of such punishment under the Habitual Criminal Act is of no concern to the jury.

We have examined other matters upon the record before us in accordance with the provisions of Supreme Court Rules 28.02 and 28.08, V.A.M.R., and we find no error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.