STATE of Missouri, Respondent,

v.

Joe Allen KERN, Appellant.

No. 54110.

Supreme Court of Missouri,
Division No. 1.

Dec. 8, 1969.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Marion E. Lamb, Moberly, for appellant.

Joe Allen Kern, pro se.

WELBORN, Commissioner.

Appeal from 25-year sentence on jury verdict finding appellant, Joe Allen Kern, guilty of assault with intent to kill with malice. § 559.180, RSMo 1959, V.A.M.S.

The principals involved in the case were inmates of the Missouri Department of Corrections Medium Security Prison near Moberly. Donald James Helms and Billy Wayne Myers had joined in a burglary in Reynolds County, which had resulted in their sentences to the custody of the Department of Corrections. In the latter part of October, 1967, Helms was transferred to the Moberly prison. At that institution Helms met appellant, Joe Allen Kern, who was imprisoned for burglary and narcotics law violation. Kern wanted Helms to move to the building where he (Kern) was housed and "be his kid." At Kern's direction, Helms requested a housing change to Kern's hall, but the request was denied. Kern told Helms to renew his request and get the change or not come back. Helms told authorities of this ultimatum and Helms was placed in protective custody for three days.

Myers had arrived at Moberly on Monday, November 6, 1967. Helms told him of the problem with Kern. When Myers was released from quarantine on Thursday, November 9, Kern approached him and told him that he (Kern) was going to have Helms "as his punk." Myers told Kern that Helms did not want such an arrangement and that he would do what he could to help Helms. Kern told Myers that he would like to discuss the matter with him again.

The following morning, at around 9:00 A.M., Myers went to the vicinity of the gymnasium to talk to Kern about Helms. The two met there, in the presence of Bill Boyer, who accompanied Kern and another

inmate, described by Myers as a Negro boxer, whose name was unknown to him. According to Myers, he and Kern walked side by side between the gym and the chapel. Myers described what then occurred:

"When we walked to the back door of the gym—I don't know the directions—but heading this way and the gym is on my right and the chapel is on my left, and when we got to the back door Kern was on my right and Boyer was on my left and I turned to face Joe Kern and he said he was going to have Don Helms to be his punk and I told him, I said, 'You can't do it, I understand that you have cigarettes and other items invested, that you have loaned him, and we will make some arrangement to reimburse you on those items, but leave him alone.' And he said to Boyer, 'Boyer, what do you think?' Boyer said, 'Whatever you do I'll back you up.' And Joe Kern, the words he said was, 'I think that you * * *', and then he came up with a knife and stabbed me here (indicating). Evidently he didn't finish the conversation, he stuck me like that, and I grabbed the knife with this hand and pulled it off and this Boyer had a knife coming from the side (indicating) and I pushed him with this hand and I was cut on both hands. I started running back towards the gym, which was to my back, and Kerns went towards the front of the gym from the chapel, and Boyer come to the back of the chapel trying to cut me off. Kern fell out here (indicating) and I started to the front of the gym towards the administration building, and he got up and tried to cut me off again and fell the second time, and the second time I made it to the bushes at the corner of the chapel and got out on the main sidewalk and they stopped, and I ran on to the administration building."

Myers went to the prison hospital where he received surgical repair of a cut in his abdomen.

At approximately 9:20 A.M., a guard looking for an inmate who might appear to have been involved in a fight took Kern into custody in the vicinity of the handball court. He did so because of blood and grass stains on Kern's clothing. At around 10:30 A.M., the guard discovered a knife in a trash barrel between the gym and the chapel.

I

The state's evidence was adequate to support the above-recited version of the affair and was obviously sufficient to permit a finding by the jury that Kern was guilty of the offense charged. We do not weigh the state's evidence against the testimony of six of the appellant's fellow-inmates that the defendant was playing handball or was at the handball courts during all of the time when the assault was claimed to have occurred. The credibility of those witnesses and of the defendant, who denied any assault on Myers, was for the jury. Nor is the submissibility of the state's case impaired by discrepancies in the testimony of the state's witnesses as to Kern's attire at the time of the offense. Myers unequivocally identified Kern as the man who attacked him with a knife. His testimony was sufficient to take the case to the jury.

II

Appellant contends that the knife found in the trash can was erroneously admitted in evidence because it was never properly identified as having any connection with the alleged crime. Myers, when asked to describe the knife in Kern's hand, stated:

"It is kind of hard to do. All I got was a glance and the knife looked to me like the blade may have been eight to ten inches long. It had a little tape around the handle. Like I say, I just got a glance as it came up to me."

He also said the knife looked like a homemade one and that he couldn't say how wide the blade was. The guard who

discovered the knife offered in evidence stated that it "looks like the weapon that I found." After the guard had testified and the knife had been marked as an exhibit, Myers was recalled as a witness and the knife exhibited to him, with the inquiry whether he had seen it before. He replied, "It looks familiar."

"Q You believe you have seen that before? A Yes, sir.

"Q Where? A In Joe Kern's hand."

Appellant argues that this testimony was not sufficient to permit the introduction of the knife into evidence. He contends that the testimony was not positive enough to connect the knife with appellant.

 Identification of a weapon allegedly used in committing a crime need not be wholly unqualified in order to make the instrument itself admissible. State v. Johnson, Mo.Sup., 286 S.W.2d 787, 791[3, 4]; State v. Maxwell, Mo.Sup., 376 S.W. 2d 170, 174[8]. Although Myers did state originally that he would have difficulty in describing the knife because he saw it only briefly, his statement that he believed the knife offered was the one he saw previously in Kern's hands was sufficient, considered with other circumstances pertaining to the knife, to justify its introduction in evidence. State v. Johnson, supra; State v. Humphries, 350 Mo. 938, 169 S.W.2d 350, 352[6]. The expression in terms of belief did not deprive Myers' testimony of probative value. State v. Brinkley, 354 Mo. 337, 189 S.W.2d 314, 323[20, 21].

### III

 Appellant urges that the trial court erred in refusing to discharge the jury upon his motion on the grounds that he had been observed by the jury in irons.

The transcript shows that, when the trial resumed on the second day, appellant's counsel moved to discharge the jury "for the reason that *a* prisoner was brought in the presence of the jurors this morning while still in irons." The transcript does not show that the prisoner in question was the appellant. Another prisoner was the first witness who testified immediately following the court's overruling of appellant's motion.

The allegation of appellant's motion for new trial that he was the prisoner involved is not self-proving, and no evidence was offered in support of the motion. The record here does not afford any basis for review of the error here alleged. State v. Caffey, Mo.Sup., 404 S.W.2d 171, 176[4]; State v. Sallee, Mo.Sup., 436 S.W.2d 246, 254[20, 21].

### IV

 Appellant's next assignment of error is based upon the court's overruling of a request to discharge the jury as follows:

"I'd like at this time for the record to show that the State's witnesses, who were brought from the institution, were dressed in civilian clothing, but that the State brought Defense witnesses in prison clothes, and ask that the jury be dismissed as this is prejudicial."

In support of his contention, appellant has cited State v. Boyd, Mo.Sup., 256 S. W.2d 765, and State v. Rice, 347 Mo. 812, 149 S.W.2d 347. These are the same authorities relied upon by appellant in support of the allegation of error regarding his appearance in shackles. These cases did deal with that question. However, we do not find that such question is analogous to that here presented. The allegation of error refers to the appearance of "witnesses subpoenaed by the Defense * * *." The defendant himself was a witness, but no objection is made, based upon his attire. Interrogation of the defense witnesses revealed that they were in the custody of the

Department of Corrections, a fact which would have been obvious in any event. The prisoner-witnesses who testified on the day that the objection was made were all confined elsewhere than at Moberly. Helms and Myers, the state prisoner-witnesses were still at Moberly at the time of trial. One of the defense witnesses who testified on the second day of the trial was confined in Moberly, but no mention was made of his attire when he testified. We find no evidence that there was a deliberate attempt on the part of prison officials to prejudice appellant by failing to dress his witnesses in civilian clothes. In view of all of the circumstances, we find no error in the court's overruling the motion to discharge the jury.

V

■ Appellant's next assignment of error relates to the introduction into evidence by the state of two jackets. One, identified as State's Exhibit 2–A, was a jacket which Kern picked up from the top of a trash can when the guard took him in custody at the handball court. Prison officials testified that the jacket was not Kern's, but was that of another prisoner. The second jacket, marked Exhibit 4–A, was found by a guard in the recreation building or gymasium at about 5:30 P.M. on the day of the stabbing. From markings in the jacket, prison personnel identified it as Kern's. The state patrol chemist testified that he found blood stains on the chest and left sleeve of 4–A and no evidence of blood on 2–A.

When the two jackets were exhibited to Myers, he identified 2–A as the jacket Kern was wearing at the time of the stabbing.

Both jackets were of the same design, and were of the type worn generally by prisoners at Moberly. The jacket marked 4–A was of lighter color than that marked 2–A. The former was described as "beige" and the latter "brown." The difference in color was the result of laundering.

The obvious thrust of the state's evidence was that Kern was wearing his own jacket at the time of the assault, that he discarded it when he went to the handball court following the attack and that, when he was taken into custody, he picked up another jacket that happened to be lying on the trash can. (The trash can was not the one in which the knife was found.) The prosecutor so argued in his closing argument. The exact basis for appellant's objection to the introduction of both jackets is not clear. In support of his assignment of error, he cites State v. Boyd, supra. As noted above, that case dealt with shackling of a defendant. We find nothing in it which supports any claim of error here urged. Appellant also cites Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690. That case dealt with the prosecution's knowing use of false and misleading demonstrative evidence. No such charge is made here.

At the most, the state's identification of the jacket was not wholly consistent. However, inconsistencies would affect only the weight and credibility of the evidence, not its admissibility. As above noted, the inconsistencies would not so affect the state's case that the jury could not have made a finding of guilt beyond a reasonable doubt.

VI

■ Appellant assigns as error the admission of testimony by a prison official that Helms told him that some inmates were bothering him and that he wanted a housing move. Appellant claims that such testimony was hearsay. However, no objection was made to the testimony when it was given. Failure to object precludes any basis for error on this appeal. State v. White, Mo.Sup., 301 S.W.2d 827, 828–829[4, 5].

VII

■ Appellant did object on the trial to testimony by Helms that he told Myers

about his trouble with Kern and by Myers that Helms told him that a couple of inmates had given him trouble and threatened him. Objection on the grounds that such testimony was hearsay was overruled. That ruling is now claimed to have been erroneous.

Prior to the objected to testimony, Helms had testified that Kern had asked him to make a housing move, that Kern wanted the witness "to be his kid," and that "being his kid" involved sex, all without objection. The objected to testimony showed that Helms had communicated Kern's request and threat to him to Myers, the victim of the assault. The testimony was not presented to prove that Kern had made the threat. It did show Myers' knowledge and thus explained the reason for his approach to the defendant which led, ultimately, to the assault. So considered, the testimony was not hearsay, and the court did not err in its ruling. State v. Bright, Mo.Sup., 269 S.W.2d 615, 623[11].

### VIII

Appellant asserts that the clothing which he wore at the time he was taken into custody was removed from him and introduced in evidence without his having received Miranda warnings and advice. He contends that the use of the clothing in evidence violated his rights under the Fourteenth Amendment to the United States Constitution. No such objection was made in the trial court, either by motion to suppress, by objection to the introduction of the clothing in evidence, or in the motion for new trial. The objection may not be raised for the first time in this court. State v. Worley, Mo.Sup., 375 S.W.2d 44, 47[72].

### IX

Appellant also objects that the clothing was introduced in evidence without proof as to the type of blood on it. Various items of clothing worn by appel-

lant when he was taken into custody were introduced in evidence. A chemist for the state highway patrol testified that he had made tests which showed that the blood on the clothing was human blood. He stated that he did not attempt to type the blood. However, the absence of such evidence would not render the evidence inadmissible. The officer who took Kern into custody noticed what appeared to be blood stains on his trousers. The guard officer to whom Kern was taken observed the stains on Kern's trousers and also on his shoes. That officer examined Kern and found no wounds or cuts on his hands, arms or face. The circumstances, together with Myers' testimony, were sufficient to warrant the inference that the blood on the clothing was that of Myers and to permit the introduction of the clothing in evidence.

### X

Appellant asserts that his trial and punishment constituted double jeopardy because he had previously been punished by prison authorities by having been placed in solitary confinement for a period of 170 days. In support of his contention that the confinement did constitute punishment, appellant enumerates numerous rights and privileges of which he was deprived by such confinement. Such confinement by administrative action does not constitute prior jeopardy within the meaning of constitutional limitations. State v. Croney, Mo.Sup., 425 S.W.2d 65, 67[3, 4].

### XI

Appellant objects to the trial court's permitting Kenneth Kinder to be indorsed as a witness and to testify. Kinder, an inmate at the time of the assault, was indorsed as a witness by leave of court on the day the trial began, April 4, 1968. In requesting leave to indorse Kinder's name, the prosecuting attorney stated that on March 21, he had advised defendant's attorney of his intention to make

such a request and that he had furnished defendant's attorney with a copy of a statement which Kinder had made to the superintendent of the Moberly prison. The essence of defendant's objection is that Kinder did not testify consistently with the statement which he had previously made.

Cases dealing with Criminal Rule 24.17, V.A.M.R., requiring the indorsement of the names of witnesses on an indictment or information, and the statutory antecedents of the rule (§§ 545.070, 545.240, RSMo 1959, V.A.M.S.) recognize the importance of the good faith of the prosecution in seeking the belated indorsement of the names of witnesses. See State v. Farris, Mo.Sup., 243 S.W.2d 983, 986–987[3–7]; State v. Howerton, Mo.Sup., 228 S.W. 745, 746 [3]; State v. Nettles, 153 Mo. 464, 55 S.W. 70, 72. Criminal Rule 24.17 emphasizes such element in permitting the addition of the names of other witnesses "at any time upon order of court and after notice to the defendant or his attorney of record." When leave to indorse Kinder's name was sought, counsel for defendant objected on the grounds that he had not had sufficient time after receiving notice of the prosecution's intention to call Kinder to contact him and make proper investigation. Counsel did not deny that he had received such notice some 15 days previously. He sought no continuance in order to get in touch with Kinder.

The prosecutor had shown the good faith required and even went further by providing defendant's counsel with a copy of the statement Kinder had given to Mr. Haynes, Superintendent of the Moberly institution. There is no showing that the prosecutor anticipated that Kinder would not testify consistently with his statement. The trial court did not err in refusing to grant a mistrial when the witness did testify otherwise.

### XII

■ The transcript of the preliminary proceedings in the magistrate court was filed in the circuit court on December 19, 1967. On December 27, 1967, defendant, by his counsel, Mr. Lamb, filed a motion seeking his removal to the Randolph County jail. The grounds of the motion were stated:

"* * * [I]t is impossible for him to properly prepare for his defense with his court appointed counsel where they reside some 75 miles apart, as is now true with the defendant confined in the State Penitentiary at Jefferson City, Missouri, and his attorney residing in Moberly, Missouri."

The information was filed on January 29, 1968, and defendant arraigned on January 30, at which time he pleaded not guilty. The request for removal to the county jail was denied at that time and the cause set for trial April 4, 1968. When the cause was called for trial on that date, defendant's counsel announced ready and made no reference to any problems in preparation for trial. The next reference to the matter appears in the motion for new trial, when it was alleged that the defendant's confinement in Jefferson City created "undue hardship upon defendant, and the defendant's court appointed attorney in preparing defendant's defense" and "that the purpose of keeping defendant in Jefferson City during the pending of this action was to harass defendant and make it more difficult for him to meet with his counsel and prepare his defense."

On the present appeal, appellant argues that his confinement in Jefferson City had the effect of denying him effective assistance of counsel.

We find no basis for error on the grounds here urged. No testimony was produced in support of either the original motion or the motion for new trial. We do, of course, know that Moberly is some 65 miles from Jefferson City. However, the transcript evidences efficient preparation for trial by defendant's counsel. He was prepared to present and did present the testimony of six witnesses in support

of the defense that Kern was playing handball at the time of the alleged assault. His skillful cross-examination of the state's witnesses demonstrated a full understanding of the basis of the state's case. The record is silent as to the actual extent of consultation between defendant and his counsel, but it does demonstrate that counsel had made a substantial effort in preparing the defense. No basis for finding inadequate representation appears and there is no showing that the trial court erred in the rulings now complained of.

### XIII

 The jury's verdict was returned on April 5, 1968, and defendant, at that time, was granted an additional 30 days for filing a motion for new trial. On April 29, defendant filed a motion to be furnished the trial transcript in order to prepare his motion for new trial prior to the filing. The motion was presented to the trial court on that date, with defendant and his attorney present. The trial court pointed out the physical impossibility of preparing a complete transcript within the 16 remaining days of the original 40-day period within which the motion was required to be filed. The court offered to order the reporter to prepare any portion which defendant or his counsel might specify. Defendant declined to specify any particular portion and stood upon his request for the full transcript. The court denied the request.

On this appeal, appellant seeks to invoke the holding in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, by alleging that the failure to provide the transcript was discrimination because of poverty. The record does not support this contention. The court's action was based not upon the defendant's ability to pay for the transcript but upon the physical impossibility of complying with defendant's request. The transcript on appeal, required by Griffin, was furnished without cost to appellant.

Appellant also contends that the court's failure to grant his request had the effect of denying defendant's counsel effective assistance in preparing the motion for new trial. The answer to this contention is that there is no demonstration that questions which might have been raised in the motion for new trial with the assistance of the transcript were omitted from the motion because the transcript was not available. A thorough motion for new trial was filed, adequately presenting matters preserved for review at the trial. The transcript was filed in the court on February 6, 1969. The appellant's brief was filed on July 28, 1969. During that interval, insofar as appears, nothing was discovered in the transcript which might have been raised in the motion for new trial. Appellant's contention is without merit.

### XIV

 Appellant contends that the trial court erred in refusing to instruct the jury on the lesser included offense of assault without malice. § 559.190, RSMo 1959, V.A.M.S. The state's evidence, as outlined above, showed only an assault with malice. The defendant denied that he committed any assault at all. There being no evidentiary basis for an instruction on the lesser offense, the trial court did not err in failing to give such an instruction. State v. Allen, Mo.Sup., 343 S.W.2d 63, 65–66[3]; State v. Spradlin, 363 Mo. 940, 254 S.W.2d 660, 661[2]. See State v. Washington, Mo.Sup., 357 S.W.2d 92, 94–95[6–8]. The argument that, because the state's case was "weak," the jury should have been permitted to consider a lesser offense is without merit.

 Appellant also asserts that the jury should have been instructed under § 216.460, RSMo 1959, V.A.M.S., dealing with assault by a prisoner in the custody of the Department of Corrections. Appellant asserts that, when he entered the prison, he was given an official document, ad-

vising him that if he assaulted another prisoner, he would be punished, upon conviction, by imprisonment for not less than two nor more than five years, the range of punishment prescribed by § 216.460. No evidentiary support for this contention appears in the record. § 216.460 does not preclude prosecution of a prisoner for the more serious offense defined by § 559.180, of assault with a dangerous and deadly weapon with malice. Nor, under the facts of this case, was an instruction under § 216.460 required on the theory that the evidence supported such a charge as a lesser included offense. State v. Allen; State v. Spradlin, supra.

The defendant, in a pro se addendum to the brief filed by his counsel, asserts that the totality of circumstances in this case, including the arrest procedures, his incarceration in solitary up to the trial, and improper procedures during the trial so tainted the trial as to deprive him of liberty without due process of law. He cites the case of People v. Dorado, Cal., 40 Cal. Rptr. 264, 394 P.2d 952, as authority in support of his contention. That case dealt with the application of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, to statements of a convict suspected of a crime within the walls. No question is presented in this case as to statements of defendant while in custody. The case cited is in nowise analogous. Appellant here received a fair trial and his contention is without merit.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER, P. J., and HOLMAN, J., concur.

STORCKMAN, J., absent.