**STATE of Missouri, Respondent,**

**v.**

**James Carroll MURPHY, Appellant.**

**No. KCD 27115.**

Missouri Court of Appeals,
Kansas City District.

March 31, 1975.

Willard B. Bunch, Public Defender, James F. Speck, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Neil Macfarlane, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

SWOFFORD, Presiding Judge.

This is a direct appeal from a conviction for the crime of first degree robbery. The

jury was unable to agree upon the penalty and the court sentenced the defendant to thirty years in the custody of the Department of Corrections. The defendant offered no evidence at his trial.

The Points Relied On by him on this appeal all involved alleged trial error relating to the introduction by the state of certain exhibits and such assertions of error require a somewhat detailed review of the evidence.

On April 28, 1972 at about 9:30 a. m. at a Safeway grocery store located at 8701 Sni-a-Bar Road in Jackson County, Missouri, the store manager, Glenn Barr, was in the enclosed courtesy check cashing booth counting cash which had just been delivered to the store by a Brink's truck. Two white males entered the store. One, armed with a sawed-off shotgun, dressed in a trench coat, hatless and wearing sunglasses, approached the booth, pointed the shotgun through the booth window at Mr. Barr, and said "This is a holdup. I want all the money." The second man, who was wearing a hat and a brown (or dark green) corduroy short coat and armed with a pistol, forced another employee of the store, one Bob Pittsenberger, into the booth and then the man with the shotgun also entered the booth and forced Barr and Pittsenberger to place the cash in a grocery bag imprinted with the Safeway name. The amount of this money was later determined by audit to be $19,740.00. As the robbers left the booth and its immediate vicinity, Mr. Barr photographed them with a "regiscope", an instrument used to photograph persons cashing checks. (These regiscope photographs were introduced by the state and admitted into evidence without objection and are not directly involved in this appeal, except as they directly bear upon proof of defendant's guilt, as hereafter discussed.)

When the two robbers left the store, Barr followed them but could not see them enter any vehicle in the parking lot because his view was obstructed by delivery trucks. He did, however, see a 1965 blue Ford automobile with three occupants leaving the lot at a high rate of speed and heading west on Sni-a-Bar Road. He was unable to identify the occupants and did not obtain the license number of the car or any other distinguishing features of the car other than the make, color and year.

Barr testified that later on the day of the robbery police officers drove him to a residence on Ewing[1] to view a blue 1965 Ford automobile parked in the driveway. Barr told the officers that he could not positively tell whether or not it was the same car, "but it looked like the same car."

Beginning at about 10:15 a. m. on the morning of the robbery, Kansas City police officers White and Hudson commenced surveillance of the residence at 6800 Elwin Road. At about 10:30 a. m. a man (unidentified) left the house; at 1:15 p. m. two women (unidentified) emerged from the house and changed the license plates on a blue 1965 Ford car parked in the driveway. At about 1:40 p. m. a man matching the description of one of the robbers, accompanied by two women and a small child, left the house, entered a 1968 Pontiac and drove away. Officer White stopped the car and arrested the man, one Kenneth Greathouse, later that day identified by Barr and Pittsenberger in a police lineup as the robber armed with the pistol at the Safeway store.

At about 2:05 p. m. Officer Hudson looked through the left rear window of the Ford and saw an object, which appeared to be the wooden butt of a shotgun, protruding from underneath a car seat. He then conducted a complete search of the interior

---

1. The police officers testified that this residence was at 6800 "Elwin" Road. This may be accounted for by reason of a typographical mistake in the transcript or a mistake as to the street by the witness, but there is nothing in the record here to support the position of defendant that Barr was taken to *two* addresses to view *two* Fords. It must be assumed that the police officers related the proper address because of their multiple activities there that day.

of the Ford, during which search he found a 12 gauge shotgun (State's Exhibit No. 1) containing one round of ammunition in the chamber (State's Exhibit No. 9); one additional round of ammunition (State's Exhibit No. 10); a .32 caliber pistol (State's Exhibit No. 2); and a .22 caliber pistol (State's Exhibit No. 3). Thereupon, Officer Hudson and other police officers entered the residence and found the defendant behind a bedroom door, and one John Welch, a Negro male, in a closet. Hudson and other officers apparently then returned to the driveway and searched the interior of a black vinyl over bronze 1965 Chevrolet parked there. Inside, they found the Safeway grocery bag (State's Exhibit No. 6) which contained cash in the amount of $19,743.00; a man's trench coat (State's Exhibit No. 4); and a brown corduroy jacket (State's Exhibit No. 5). In the pocket of the trench coat, they found three live rounds of .12 gauge ammunition bound by a rubber band (State's Exhibit No. 11).

In the evening of the robbery, both Barr and Pittsenberger separately identified the defendant as the man with the shotgun who had robbed them that morning. Also, they both made positive in-court identification of the defendant.

At the trial, Glenn Barr testified that State's Exhibit No. 1, the shotgun recovered from the 1965 Ford, "looks like" the one used in the robbery and "could be" the same. As to State's Exhibits 2 and 3, the two pistols found in the 1965 Ford, he testified that "either one could pass" for the revolver used by the second robber and "I couldn't say this one or that one". As to State's Exhibit No. 4, the brown corduroy coat recovered from the 1965 Chevrolet, Barr testified, as did Pittsenberger, that it "looks like" the one worn by the second robber. Barr stated it was the same style and color. Barr also testified that the brown paper grocery bag (State's Exhibit No. 6) recovered from the Chevrolet "is the same type of sack I put the money in". These exhibits, together with State's Exhibit No. 9, the live round of ammunition found in the chamber of the shotgun, State's Exhibit No. 10, the live round found on the floor of the 1965 Ford, and State's Exhibit No. 11, the three shotgun shells found in the pocket of the trench coat, were admitted in evidence over the objection of the defendant, which was couched in these terms:

"MR. HUGHES: There has been no direct evidence that these items belonged to the defendant. No proper foundation for them. Other than that I wouldn't care why he admitted them."

The defendant did not testify and offered no evidence. He did not make an oral or written motion to suppress any of the exhibits. In his motion for a new trial, his second ground stated:

"The evidence of guns, money and bags offered and allowed into evidence with no supporting documentation identifying defendant with items, contrary to hearsay rule, was plain error and prejudicial against defendant."

Upon this appeal the defendant raises three points, which may be summarized as follows:

I State's Exhibits 1, 2, 3, 9 and 10 (all of which were recovered by the police from the 1965 Ford) were improperly received into evidence because they were not sufficiently connected to the defendant or the crime.

II State's Exhibits 1, 2, 3, 4, 5, 6, 9, 10 and 11 were improperly received in evidence because they were obtained as a result of a constitutionally impermissible search and seizure.

III The receipt into evidence of these exhibits constituted "plain error" and resulted in "manifest injustice"

within the meaning of Supreme Court Rule 27.20(c), V.A.M.R.

■ Directing attention to the defendant's second point, which raises the constitutional issue as to the police search and seizure asserted to be in violation of the Fourth Amendment of the Constitution of the United States, and Article I, Section 15, of the Constitution of Missouri, V.A. M.S., it is apparent from the record that this point was never raised at the trial level but emerges for the first time in defendant's brief filed in this court. It has long been the rule in this state where a defendant relies upon the point of an unconstitutional search and seizure and objects to the admission into evidence of the fruits thereof, he must raise such point at the trial level by motion to suppress such evidence, object to the introduction of such evidence, and preserve such constitutional point in his motion for a new trial in order to warrant appellate review. State v. Tunnell, 302 Mo. 433, 259 S.W. 128, 130[5] (Mo. banc 1924); State v. Lockhart, 501 S.W.2d 163, 166[5] (Mo.1973); State v. Thompson, 490 S.W.2d 50, 52[2] (Mo.1973); State v. Bryson, 506 S.W.2d 358, 360[2] (Mo.1974).

The rationale for this rule is that the trial court should first be given an opportunity to explore the constitutional implications thus presented in the interest of securing to the defendant a fair trial and substantial justice. A further persuasive reason for this rule is expressed in State v. Thompson, supra, 490 S.W.2d at l.c. 52, where the Supreme Court said:

"Since defendant did not object to the search in the trial court there is not sufficient evidence in the record for this court to review the question. There was no occasion for the State to justify the search. If a motion to suppress had been filed the State might have proved consent for the search or some other fact which would have caused it to be held valid."

Since the constitutional argument raised by defendant under his second point was not properly preserved in the trial or post trial proceedings below, this point is ruled against him.

By reason of this conclusion, the defendant's constitutional point based upon his charge that State's Exhibits were improperly admitted is reduced to the proposition, as set forth in his third point, that the admission of them constituted "plain error" under Rule 27.20(c).

■ This rule cannot be used as a vehicle for review of every alleged trial error which is not asserted or properly preserved in the trial court. State v. Mabery, 437 S.W.2d 91, 93[1, 2] (Mo.1969); State v. Jackson, 411 S.W.2d 129, 131[2] (Mo. 1967). In order to justify the application of the "plain error" rule, it must appear that there is a "sound, substantial, clear showing that injustice or miscarriage of justice will result" if the rule is not invoked. State v. Meiers, 412 S.W.2d 478, 480–481[1] (Mo.1967); State v. Carpenter, 436 S.W.2d 748, 750–751[1] (Mo.1969); State v. Lockhart, supra; State v. Caffey, 457 S.W.2d 657, 660[4, 5] (Mo.1970). Leaving aside the fact that this record does not reveal that the search and seizure was constitutionally impermissible, it does not appear that the above criteria of "plain error" by deprivation of substantial justice has been met. The proof adduced by the state that defendant participated in the robbery of the Safeway store was abundant, clear and convincing, without resort to the questioned exhibits. Defendant's third point is ruled against him.

■ This leaves for determination defendant's first point, that the five exhibits found in the Ford automobile, the three firearms and two live shotgun shells (State's Exhibits 1, 2, 3, 9 and 10) were improperly admitted because they were not connected either with him or the crime. His argument on this point is bottomed upon the fact that there was no direct

proof that he owned such exhibits, that they were not in his actual or constructive possession when seized and that his identification by the victims Barr and Pittsenberger and their identification of the weapons was equivocal and uncertain as was Barr's identification of the Ford automobile in which they were found. The testimony of these two witnesses for the State has been summarized above and need not be repeated here. Suffice it to say that the identification of the defendant by both Barr and Pittsenberger at both the lineup and trial was definite, positive and unequivocal and placed him at the scene as an active participant in the robbery. This fact, coupled with the circumstances of defendant's presence at the Elwin Street address later in the day, the presence of the Ford automobile at that address, the presence of the shotgun, pistols and ammunition in the car and the robbery loot and wearing apparel similar to that worn by the robbers found in the Chevrolet also parked in the driveway at the Elwin Street residence, the apprehension of Greathouse, identified as the other robber involved, as he left those premises, rendered the less-than-positive identification of the firearms by Barr and Pittsenberger admissible. Under such facts and circumstances, identification of weapons need not be wholly unqualified, but the courts have held that the weight to be given such identification is for the jury. State v. Kern, 447 S.W.2d 571, 575[3, 4] (Mo.1969); State v. Johnson, 286 S.W.2d 787, 791[3, 4] (Mo.1956); State v. Maxwell, 376 S.W.2d 170, 174[8] (Mo.1964).

The authorities cited by defendant on this point have been carefully analyzed and each is clearly distinguishable on the facts. The above-cited decisions of the Supreme Court are determinative of this issue. Defendant's first point is ruled against him.

The judgment is affirmed.

All concur.